# 14-1410-CV

# United States Court of Appeals
## for the
# Second Circuit

IN RE: ADVANCED BATTERY TECHNOLOGIES, INCORPORATED

———————————————————————

RUBLE SANDERSON,

*Plaintiff-Appellant,*

JAMES QUAN, JAMES M. BURNS, ARNOLD COHEN, GEOFF CONNORS,
GREGORY BONIN, Individually and on behalf of all others similarly situated,

*Plaintiffs,*

– v. –

ADVANCED BATTERY TECHNOLOGIES, INCORPORATED, ZHIGUO FU,
GUOHUA WAN, DAN CHANG, BAGELL, JOSEPHS, LEVINE & CO., LLC,
FRIEDMAN LLP, EFP ROTENBERG, LLP,

*Defendants-Appellees.*

———————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE
## EFP ROTENBERG, LLP

HISCOCK & BARCLAY, LLP
*Attorneys for Defendant-Appellee*
*EFP Rotenberg, LLP*
One Park Place
300 South State Street
Syracuse, New York 13202
(315) 425-2836

GABRIEL M. NUGENT
PAUL A. SANDERS
*of Counsel*

## CORPORATE DISCLOSURE STATEMENT

Defendant-Appellee EFP Rotenberg, LLP, is a 100% privately-owned State of New York corporation with its principal place of business located in Rochester, Monroe County, New York.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .............................................................................iv

INTRODUCTION ..........................................................................................1

STATEMENT OF THE ISSUES PRESENTED ................................................5

STATEMENT OF THE CASE ........................................................................7

    I.     The Parties ......................................................................................7

          A.    ABAT Defendants.................................................................7

          B.    Auditor Defendants ...............................................................8

          C.    Plaintiffs .............................................................................9

    II.    Plaintiffs' Allegations Against EFP ...............................................10

SUMMARY OF ARGUMENT .......................................................................11

ARGUMENT ...............................................................................................13

    THE SAC FAILS TO ALLEGE A SECURITIES FRAUD CLAIM
    AGAINST EFP ........................................................................................13

    I.     Applicable Legal Standards .............................................................13

    II.    The SAC Was Properly Dismissed Because It Failed To
          Allege EFP Had The Requisite Scienter ..........................................14

          A.    The Pleading Standard For Auditor Scienter ..........................15

          B.    Plaintiffs Failed To Bolster Significantly Their
              Allegations ........................................................................17

          C.    Plaintiffs' Allegations Regarding The Shenzhen
              Acquisition Do Not Establish Scienter ...................................20

1.      Even Assuming EFP Would Have Discovered The Fraud Had It Conducted A More Thorough Investigation, Such Conduct Constitutes Negligence At Most And Is Insufficient To Establish Auditor Scienter ............................................20

2.      The Inference That The Circumstances Surrounding The Shenzhen Acquisition Were Concealed From EFP Is More Compelling Than The Inference That EFP Recklessly Disregarded Fraud .........................................................23

3.      EFP Had No Duty To Report Fraud In Connection With The Shenzhen Acquisition Because It Did Not Close During The 2010 Audit Period...................................................26

D.      Plaintiff's Argument Regarding High Profit Margins Has Been Abandoned And The Allegations Do Not Otherwise Establish Scienter ...................................................28

1.      Plaintiffs Have Abandoned Any Argument Related To High Profit Margins ....................................28

2.      High Profit Margins Do Not Constitute A Red Flag Or, Alternatively, The Failure To Uncover Same Constitutes Negligence At Most........................29

**CONCLUSION**................................................................................................31

# TABLE OF AUTHORITIES

**Cases**                                                        **Page**

*Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372 (S.D.N.Y. 2010)..........22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...............................13, 14

*Chill v. General Elec. Co.*, 101 F.3d 263 (2d Cir. 1996)..................13, 16, 29

*Dsam Global Value Fund v. Altris Software*, 288 F.3d 385 (9th Cir. 2002)..........21

*Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005) ...............................14

*Fresh Meadow Food Servs., LLC v. RB 175 Corp.*, 549 Fed. App'x 34 (2d Cir. 2014).....................................................................................28

*Goldman v. McMahan, Brafman, Morgan & Co.*, 706 F. Supp. 256 (S.D.N.Y. 1989) ..................................................................................21

*Health-Chem Corp. v. Baker*, 915 F.2d 805 (2d Cir. 1990) ...................13

*In re Advanced Battery Techs., Inc. Sec. Litig.*, No. 11-2279, 2012 U.S. Dist. LEXIS 123757 (S.D.N.Y. Aug. 29, 2012)................................passim

*In re Advanced Battery Techs., Inc.*, No. 11 Civ. 2279, 2013 U.S. Dist. LEXIS 102325 (S.D.N.Y. July 18, 2013)..........................................passim

*In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386 (S.D.N.Y. 2010) ................16, 17, 22

*In re IMAX Secs. Litig.*, 587 F. Supp. 2d 471 (S.D.N.Y. 2008) .......................16, 17, 22

*In re J.P. Jeanneret Assocs.*, 769 F. Supp. 2d 340 (S.D.N.Y. 2011).....................22

*In re MRU Holdings Sec. Litig.*, 769 F. Supp. 2d 500 (S.D.N.Y. 2011) ...............16

*In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611 (S.D.N.Y. 2007) .......................15

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001).......................................15

*Meridian Horizon Fund, LP v. KPMG (Cayman)*, 487 Fed. App'x 636 (2d Cir. 2012) ...............................................................16, 24, 30

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) .................................15, 17, 21

*O'Brien v. Price Waterhouse*, 740 F. Supp. 276 (S.D.N.Y. 1990) ........................21

*Otero v. Bridgeport Hous. Auth.*, 297 F.3d 142 (2d Cir. 2002) ..............................28

*Pennsylvania Ave. Funds v. Inyx, Inc.*, No. 08 Civ. 6857 (PKC), 2010 U.S. Dist. LEXIS 19177 (S.D.N.Y. Mar. 1, 2010) ........................................26

*PR Diamonds, Inc. v. Chandler*, 364 F.3d 671 (6th Cir. 2004) ..............................29

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000) ...................................15, 16

*Securities and Exch. Comm'n v. Espuelas*, 579 F. Supp. 2d 461 (S.D.N.Y. 2008) ...............................................................29

*South Cherry St. LLC v. Hennessee Group LLC*, 534 F. Supp. 2d 405 (S.D.N.Y. 2007) ...............................................................14, 22

*Stephenson v. PricewaterhouseCoopers, LLP*, 482 Fed. App'x 618 (2d Cir. 2012) ...............................................................16, 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) .....................23, 25

*The Limited, Inc. v. McCrory Corp.*, 683 F. Supp. 387 (S.D.N.Y. 1988) ..............21

*United States v. Arthur Young & Co.*, 465 U.S. 805 (1984) ..................................26

*Wilamowsky v. Take-Two Interactive Software, Inc.*, 818 F. Supp. 2d 744 (S.D.N.Y. 2011) ...............................................................13

## Statutes

15 U.S.C. § 78j(b) ...............................................................14

15 U.S.C. §§ 77z-1 & 78u-4 ...............................................................1, 14

**Rules**

17 C.F.R. § 240.10b-5 ..................................................................14

Fed. R. Civ. P. 12(b)(6) ..........................................................1, 3, 13

Fed. R. Civ. P. 9(b) ................................................................1, 14

## INTRODUCTION

Plaintiffs claimed to have suffered a loss when the value of their stock in Defendant Advanced Battery Technologies, Inc. ("ABAT") declined by 43% following the publication of a March 30, 2011, report by short-seller Variant View Research ("Variant View"), which purported to expose ABAT's fraudulent conduct.  Plaintiffs alleged, without pleading the requisite elements, that Defendant-appellee EFP Rotenberg, LLP ("EFP") failed to disclose ABAT's fraud in an audit report for the year ended 2010 contained in ABAT's 2010 Form 10-K.

EFP moved on November 23, 2011, to dismiss Plaintiffs' Corrected First Amended Consolidated Class Action Complaint (the "Original Amended Complaint") pursuant to Fed. R. Civ. P. Rules 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act, 15 U.S.C. §§ 77z-1 and 78u-4 ("PSLRA").  By Decision and Order dated August 27, 2012 (the "Original Decision and Order") (A-92-131), the District Court granted the motion dismissing the Original Amended Complaint (A-26-91) as against EFP.   *In re Advanced Battery Techs., Inc. Sec. Litig.*, No. 11-2279, 2012 U.S. Dist. LEXIS 123757 (S.D.N.Y. Aug. 29, 2012) ("*ABAT I*").  The District Court held Plaintiffs lacked standing, and the allegations against EFP were deficient with respect to the scienter element.

In dismissing the Original Amended Complaint, the District Court authorized Plaintiffs to move for leave to replead their claims against EFP and

Bagell, Josephs, Levine & Co. ("Bagell") (collectively, the "Auditor Defendants"), stating as follows, as to EFP:

> [I]n view of the Complaint's additional deficiencies with respect to the issue of EFP's scienter — which, as noted, are largely the same as those identified with respect to [Bagell] — I will not grant leave to replead against EFP unless Plaintiffs demonstrate that amendment would not be futile. Plaintiffs will have to follow the usual course of filing a motion for leave to amend to which an amended complaint is attached if they wish to have this option considered — and if, as I suspect will prove to be the case, they are unable to bolster significantly their allegations, so that they allege more than a negligent audit, amendment will be deemed futile.

(A-131); *ABAT I*, 2012 U.S. Dist. LEXIS 123757, at *65.

Plaintiffs thereafter sought leave to replead their claims once again, attaching a proposed Second Amended Complaint ("SAC"). (A-133-225.) To address the lack of standing against EFP, the SAC proposed to add a new plaintiff – Frederico Schmid.

Save for one fraud allegation, the SAC eliminated all previous allegations against EFP.[1] The sole remaining allegation was that EFP failed to disclose

---

[1] The SAC did not allege that EFP committed fraud by disregarding any of the other six purported "red flags" in the Original Amended Complaint (nearly all of which did not relate to EFP's 2010 audit). The District Court confirmed the same in its Second Decision and Order stating, "Plaintiffs' sole surviving allegation against EFP is that it failed to disclose that ABAT's acquisition of Shenzhen was an instance of self-dealing." (A-230); *In re Advanced Battery Techs., Inc*., No. 11 Civ. 2279, 2013 U.S. Dist. LEXIS 102325, *10 (S.D.N.Y. July 18, 2013).

ABAT's 2011 acquisition of Shenzhen Zhongqiang New Energy Science & Technology Co., Ltd. ("Shenzhen") as a related party transaction. The SAC, however, alleged no new facts regarding the Shenzhen acquisition – failing to "bolster significantly" their allegations as required by the Original Decision and Order.

Bereft of any new factual allegations, the SAC, like the Original Amended Complaint, failed to plead auditor scienter against EFP. As a result, the proposed claim against EFP was unable to withstand a motion to dismiss pursuant to Fed. R. Civ. P. Rule 12(b)(6) for failure to state a claim.

By Decision and Order filed July 18, 2013 (the "Second Decision and Order"), the District Court denied Plaintiffs' motion for leave to file the SAC, finding it does no more than allege negligence against EFP, and the inference that the fraud was concealed from EFP was more compelling than the inference that EFP recklessly disregarded the fraud. The District Court reasoned as follows:

> While EFP arguably had more of a "duty to familiarize itself with the particulars of [the Shenzhen] transaction" than [Bagell] did in light of the fact that EFP audited ABAT's 2010 financial statements . . . Plaintiffs' allegations against EFP with respect to that transaction (see, e.g., SAC ¶ 187) are still deficient, because they amount to no more than allegations of professional negligence or shoddy auditing, and therefore do not support a strong inference of auditor scienter . . . . Indeed, Plaintiffs' argument ultimately comes down to the following: "had EFP done the bare minimum and obtained the underlying documentation for Shenzhen, it

- 3 -

would have observed that Defendant Zhiguo Fu, the Company's Chairman and CEO, was involved in the transaction and profiting mightily from it" . . . . This argument echoes those asserted against [Bagell], and fails for the same reasons.

Furthermore, I agree with EFP that the "inference that [EFP, like Bagell,] was kept as much in the dark as the investors is more compelling than the inference that [EFP] recklessly disregarded clear signs of fraud" with respect to the Shenzhen transaction . . . .

(A-241-242); ABAT II, 2013 U.S. Dist. LEXIS 102325, at *28-30 (internal citations omitted).

By Notice of Appeal, dated April 22, 2014, Plaintiffs appealed from the Second Decision and Order only, which denied "Plaintiffs' Motion For Leave To File A Second Amended Complaint, entered in this action on July 18, 2013." (A-243-244.)  Since Plaintiffs appealed from the Second Decision and Order only, this Brief addresses only the single remaining fraud allegation against EFP in the SAC, and not those in the Original Amended Complaint, the dismissal of which Plaintiffs have not challenged.

Plaintiffs summarize their argument against EFP in the Statement of the Case (Appellant's Brief, p. 13) as follows:

EFP ignored red flags that alerted it to the fraud: (1) ABAT executed the agreement to acquire Shenzhen on December 20, 2010, and the transaction closed on January 6, 2011 (A-156-57); and (2) ABAT reported unrealistically high profit margins in its 2010 Form 10-K (A-152-53).

- 4 -

This summary is misleading because the SAC does not allege that EFP ignored "unrealistically high profit margins" or committed fraud with respect to that purported red flag, and Plaintiffs did not address this allegation in their motion for leave to replead.  Plaintiffs also failed to address that issue in their brief on this appeal.  Consequently, this allegation should be disregarded.

However, even if this allegation is considered along with the allegation concerning the Shenzhen acquisition, Plaintiffs still will have failed to alleged auditor scienter as a matter of law.  Accordingly, the Second Decision and Order should be affirmed.

## STATEMENT OF THE ISSUES PRESENTED

A.    Concerning the Shenzhen acquisition, whether the District Court properly denied Plaintiffs' motion for leave to file the SAC against EFP where:

(1)    Plaintiffs failed to bolster significantly the allegations as required by the Original Decision and Order;

(2)    Even assuming EFP would have discovered the fraud had it conducted a more thorough investigation, such conduct constitutes negligence at most, which is insufficient to establish auditor scienter;

(3)     The inference that the purported suspicious circumstances surrounding the Shenzhen acquisition were concealed from EFP is more compelling than the inference that EFP had knowledge of, but recklessly disregarded, the fraud; and

(4)     EFP had no duty to report fraud in connection with the Shenzhen acquisition because the acquisition did not close during the 2010 audit period.

B.     Concerning unrealistically high profit margins, whether the District Court properly denied Plaintiffs' motion for leave to file the SAC against EFP where:

(1)     The SAC does not allege EFP committed fraud by disregarding high profit margins;

(2)     High profit margins do not constitute a red flag; and

(3)     Even if EFP did fail to uncover unrealistically high profit margins, such conduct constitutes negligence at most, which is insufficient to establish auditor scienter as a matter of law.

C.     Whether Plaintiffs abandoned their appeal with respect to the allegation concerning unrealistically high profit margins since Plaintiffs failed to include that allegation in the SAC and failed to raise that argument in their motion for leave to replead and in their brief on this appeal.

- 6 -

## STATEMENT OF THE CASE

The following facts come from the allegations in the SAC.

## I.    The Parties

### A.    *ABAT Defendants*

The primary defendants in the lawsuit are ABAT and two of its officers. ABAT designs and manufactures rechargeable batteries and electric vehicles at facilities located in the People's Republic of China.  (A-137; SAC ¶ 15.)  ABAT's stock was traded on the NASDAQ exchange after it went public through a reverse merger in 2004.  (A-137-138; SAC ¶¶ 15, 17.)

Individual defendant Zhiguo Fu ("Fu") is ABAT's Chairman and Chief Executive Officer.   (A-138; SAC ¶ 18.)   Individual defendant Guohua Wan ("Wan") was ABAT's Chief Financial Officer.  (A-138; SAC ¶ 19.)

The SAC alleges ABAT and its officers made "false and/or misleading statements" and "failed to disclose" material adverse facts about its business starting in 2007 and ending on March 30, 2011, when the alleged "truth" emerged in a report by Variant View.  (A-134-135; SAC ¶¶ 3-4.)  The SAC alleges ABAT's shares declined 43% in value following the publication of the report.  (A-135; SAC ¶ 5.)

**B.**    *Auditor Defendants*

Auditor Defendant Bagell served as ABAT's auditor from 2006 until 2010 when it merged with Auditor Defendant Friedman, LLP.  (A-138; SAC ¶ 21.)  Friedman, LLP served as ABAT's auditor from January 1, 2010, to December 14, 2010, and audited ABAT's 2009 financial statements.  (A-139; SAC ¶ 22.)  (Bagell and Friedman are collectively referred to herein as "Bagell.")

ABAT retained EFP on December 14, 2010.  (A-139; SAC ¶ 23.)   EFP audited only ABAT's 2010 financial statements, which were included in ABAT's 2010 Form 10-K, published on March 16, 2011.  (A-168-169; SAC ¶ 107.)   The following language is quoted from EFP's audit report:

> We conducted our audit in accordance with the standards of the Public Company Accounting Oversight Board (United States).
>
> * * *
>
> A material weakness is a control deficiency,  or combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the Company's annual or interim financial statements will not be prevented or detected on a timely basis.  The following material weaknesses have been identified and included in Management's Report on Internal Control over Financial Reporting:  (a) a lack of expertise in identifying and addressing complex accounting issues under U.S. Generally Accepted Accounting Principles among the personnel in the Company's accounting department, which has resulted in errors in accounting that necessitated a restatement of the financial statements for

2008 and 2009 and (b) inadequate review by management personnel of the Company's reports prior to filing, which resulted in errors in prior filings that necessitated the filing of amendments to the 2009 Annual Report and the Quarterly Reports through the quarter ended September 30, 2010. These material weaknesses were considered in determining the nature, timing, and extent of audit tests applied in our audit of the 2010 financial statements.

In our opinion, because of the effect of the material weaknesses described above on the achievement of the objectives of the control criteria, Advanced Battery Technologies, Inc. has not maintained effective internal control over financial reporting as of December 31, 2010, based on criteria established in *Internal Control— Integrated Framework* issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO).

(A-168-169; SAC ¶ 107.)

## C.    *Plaintiffs*

Lead plaintiff Ruble Sanderson allegedly sustained damages from purchasing artificially-inflated ABAT securities as set forth in his certification attached to the SAC. (A-137; SAC ¶ 13.) Proposed plaintiff Federico Schmid ("Schmid") allegedly sustained damages from purchasing artificially-inflated ABAT securities as set forth in his certification also attached to the SAC. (A-137; SAC ¶ 14.)

## II.    Plaintiffs' Allegations Against EFP

The sole allegation of fraud against EFP in the SAC is that EFP allegedly failed to disclose that the Shenzhen acquisition was a related party transaction.  (A-181, A-186, A-194; SAC ¶¶ 155, 168, 186-187.)

The SAC alleges as follows: on December 20, 2010, ABAT filed a Form 8-K announcing it would acquire Shenzhen for $20 million (A-156-157; SAC ¶ 78); Fu had previously purchased Shenzhen in 2008 for $1 million (A-157; SAC ¶ 80); and ABAT failed to disclose the Shenzhen acquisition was a related party transaction (A-157; SAC ¶ 80).   ABAT allegedly failed to disclose (or concealed) this information so ABAT could "funnel $19 million to Fu." (A-157-158; SAC ¶¶ 80, 83.)

The SAC further alleges as follows against EFP:

> [EFP] audited ABAT's 2010 financial statements that announced the Shenzhen transaction discussed above, which was an undisclosed related party transaction engineered to benefit [Fu] personally . . . [EFP's] audit of these financials failed to meet basis [*sic*] auditing standards with respect to its duty to identifying [*sic*] transactions with related parties, in particular the Shenzhen transaction.

(A-181; SAC ¶ 155.)

> [W]ith regard to the Shenzhen acquisition, [EFP] was required to collect and evaluate basic documentation concerning the transaction and to verify relevant details with third parties.  As already detailed, had it done so,

- 10 -

> [EFP] would have easily uncovered that the transaction
> was a sham designed to siphon money from [ABAT].

(A-186 (*see also* A-194); SAC ¶ 168 (*see also* SAC ¶¶ 186-187).)

EFP's audit was limited to 2010, but the Shenzhen acquisition did not close until January of 2011.  ABAT's December 20, 2010, Form 8-K clearly states the acquisition was to occur in 2011:

> On December 20, 2010 Harbin Zhongqiang Power-Tech
> Co., Ltd. ("Harbin Zhonguiang"), which is a subsidiary
> of the [ABAT], entered into an Acquisition Agreement
> with [Shenzhen].  The Acquisition Agreement provides
> that on ***January 1, 2011*** Harbin Zhongqiang will acquire
> all of the assets of [Shenzhen].

(A-156-157; SAC ¶ 78 (emphasis added).)   The ABAT 2010 Form 10-K states Shenzhen was in fact acquired on January 6, 2011:  "On January 6, 2011, [ABAT], through its subsidiary, [HLJ ZQPT], acquired all of the assets of [Shenzhen] . . . ." (A-157; SAC ¶ 79.)

## SUMMARY OF ARGUMENT

With respect to the alleged Shenzhen acquisition, Plaintiffs failed to plead auditor scienter, and/or the appeal lacks merit, for the following reasons:

(1)    Plaintiffs failed to bolster significantly the allegations concerning the Shenzhen acquisition as required by the Original Decision and Order, which remains unchallenged, and therefore were not entitled to leave to file the SAC;

- 11 -

(2)  On the merits, even assuming EFP would have discovered the fraud had it conducted a more thorough investigation, such conduct constitutes negligence at most and is insufficient to establish auditor scienter;

(3)  The inference that the purported suspicious circumstances surrounding the Shenzhen acquisition were concealed from EFP is more compelling than the inference that EFP had knowledge of, but recklessly disregarded, the fraud; and

(4)  EFP had no duty to report fraud in connection with the Shenzhen acquisition because it did not close during the 2010 audit period but rather in 2011 (after the audit period).

With respect to alleged unrealistic profit margins, Plaintiffs failed to plead auditor scienter, and/or the appeal lacks merit, for the following reasons:

(1)  The SAC does not allege EFP committed fraud by disregarding unrealistically high profit margins;

(2)  Since Plaintiffs failed to make this allegation in the SAC or address it in their motion for leave to replead or in their brief, the argument should be deemed waived or abandoned;

(3)  High profit margins do not constitute a red flag; and

(4)    Even if EFP did fail to uncover unrealistic profit margins, such

conduct constitutes negligence at most and is insufficient to establish

auditor scienter.

**ARGUMENT**

**THE SAC FAILS TO ALLEGE A
SECURITIES FRAUD CLAIM AGAINST EFP**

## I.    Applicable Legal Standards

A motion for leave to amend a complaint should be denied if the proposed

amendment is futile; an amendment is futile if the proposed allegations would not

withstand a motion to dismiss pursuant to Rule 12(b)(6).  *Wilamowsky v. Take-Two

Interactive Software, Inc.*, 818 F. Supp. 2d 744, 761-762 (S.D.N.Y. 2011) (citing

*Lucente v. International Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002);

*Chill v. General Elec. Co.*, 101 F.3d 263, 272 (2d Cir. 1996)).

Where a proposed amended complaint in a securities fraud action fails to

adequately plead the element of scienter, leave to amend is properly denied as

futile.  *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990).

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  "[A] plaintiff's obligation to provide the grounds of his entitlement to

relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).  Unless the allegations have "nudged [the plaintiff's] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." *Id*. at 570.

Securities fraud claims are subject to the heightened pleading standards of Fed. R. Civ. P. 9(b) and the PSLRA.  To meet the stringent pleading requirements of the PSLRA, a securities fraud complaint must "'specify' each misleading statement; . . . set forth the facts 'on which [a] belief' that a statement is misleading was 'formed'; and . . . 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind'." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (citations omitted).

## II.    The SAC Was Properly Dismissed Because It Failed To Allege EFP Had The Requisite Scienter

The elements of a securities fraud claim under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), or Rule 10(b)-5, 17 C.F.R. § 240.10b-5, are (1) a material misrepresentation or omission by the defendant; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) relied upon by the plaintiff (*i.e.*, transaction causation); (5) economic loss; and (6) loss causation.  *Dura Pharm., Inc.*, 544 U.S. at 341; *South Cherry St. LLC v.*

*Hennessee Group LLC*, 534 F. Supp. 2d 405, 414 (S.D.N.Y. 2007); *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 640 (S.D.N.Y. 2007).

Plaintiffs' motion for leave to file the SAC was properly denied because it failed to plead auditor scienter.

### A.    *The Pleading Standard For Auditor Scienter*

Since the Original Amended Complaint failed to allege EFP had a motive to commit fraud, Plaintiffs were required to satisfy the "conscious misbehavior or recklessness" standard. *See Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (requiring particularized allegations showing conscious misbehavior or recklessness by defendants that must be greater than those necessary even to support an "ordinary" securities fraud claim). To satisfy the "conscious misbehavior or recklessness" standard, "[a] plaintiff must allege . . . 'an intent to deceive, manipulate or defraud.'" *Id*. at 138 (citations omitted). The court must be able to infer from the pleaded facts that a defendant intended to participate in a fraud. *Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir. 2000); *see also Novak v. Kasaks*, 216 F.3d 300, 312 (2d Cir. 2000) ("the scienter requirement can be satisfied by pleading either 'conscious recklessness' – i.e., a state of mind 'approximating actual intent, and not merely a heightened form of negligence' – or 'actual intent.'")

"The standard for pleading auditor scienter is demanding."  *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 415-416 (S.D.N.Y. 2010) (citing *In re Scottish Re Group Sec. Litig.*, 524 F. Supp. 2d 370, 385 (S.D.N.Y. 2007)).  "For 'recklessness on the part of a non-fiduciary accountant' to satisfy securities fraud scienter, 'such recklessness must be conduct that is 'highly unreasonable', representing 'an extreme departure from the standards of ordinary care.'  It must, in fact, approximate an actual intent to aid in the fraud being perpetrated by the audited company."  *Rothman*, 220 F.3d at 98 (citing *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 120-121 (2d Cir. 1982)); *see also Meridian Horizon Fund, LP v. KPMG (Cayman)*, 487 Fed. App'x 636, 640 (2d Cir. 2012).

A plaintiff must allege facts showing "the accounting practices were so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts."  *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d at 415-416 (citing *In re IMAX Secs. Litig.*, 587 F. Supp. 2d 471, 483 (S.D.N.Y. 2008); *Chill*, 101 F.3d at 269; *Stephenson v. PricewaterhouseCoopers, LLP*, 482 Fed. App'x 618, 622-623 (2d Cir. 2012).

"[A] 'shoddy audit' does not establish intent to defraud."  *In re MRU Holdings Sec. Litig.*, 769 F. Supp. 2d 500, 518-519 (S.D.N.Y. 2011) (citing *In re*

*Tremont Secs. Law*, 703 F. Supp. 2d 362, 371 (S.D.N.Y. 2010)).  "'[A]llegations of [generally accepted accounting principles (GAAP)] violations or accounting irregularities, standing alone, are insufficient to state a . . . fraud claim' absent 'evidence of corresponding fraudulent intent.'"  *Stephenson*, 482 Fed. App'x at 623 (citing *Novak*, 216 F.3d at 309).

Violations of professional standards will support a strong inference of scienter only if coupled with "reds flags" the auditor ignored.  *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d at 416 (citing *In re AOL Time Warner, Inc. Secs. and "ERISA" Litig.*, 381 F. Supp. 2d 192, 240 (S.D.N.Y. 2004)).  That said, "the auditor must have actually been aware of the red flags . . . .  [O]nly those red flags that [the auditor] is alleged to have known of, or that are so obvious that [the auditor] must have known of them, can support an inference of intent."  *Id.* (citing *Stephenson*, 700 F. Supp. 2d at 623).  "[M]erely alleging that the auditor had access to the information by which it could have discovered the fraud is not sufficient."  *Id.* (citing *In re IMAX Secs. Litig.*, 587 F. Supp. 2d at 484).

### B.    *Plaintiffs Failed To Bolster Significantly Their Allegations*

In the Original Decision and Order, which has not been appealed from, the District Court found that the Original Amended Complaint failed to adequately allege auditor scienter against EFP and stated that any proposed amendments would be deemed futile unless they were bolstered significantly:

> [I]f, as I suspect will prove to be the case, [Plaintiffs] are unable to bolster significantly their allegations [against EFP], so that they allege more than a negligent audit, amendment will be deemed futile.

(A-131); *ABAT I*, 2012 U.S. Dist. LEXIS 123757, at *65.

Despite the District Court's admonition, the factual allegations regarding the Shenzhen acquisition found in Paragraphs 78-85 of the SAC, under Section B, entitled Defendants' Misrepresentations Concerning the Shenzhen Acquisition (A-156-159)[2] are identical to the allegations in the Original Amended Complaint. The Original Amended Complaint alleged as follows:

> [W]ith regard to the Shenzhen acquisition, the Auditor Defendants were required to collect and evaluate documentation concerning the transaction and to verify relevant details with third parties. Had they done so, the Auditor Defendants would have easily uncovered that the transaction was a sham designed to siphon money from the Company.

(A-179 (*see also* A-181-182); Original Amended Complaint ¶ 147 (*see also* Original Amended Complaint ¶¶ 157 & 159).)  As the District Court observed, those allegations are simply repeated in the SAC.  (A-232); *ABAT II*, 2013 U.S. Dist. LEXIS 102325, at *12-13 ("Plaintiffs' allegations regarding the Shenzhen transaction in the Second Amended Complaint are essentially identical to those in

---

[2] This section is found under the heading Materially False and Misleading Statements Issued by Defendants During the Class Period in both the SAC and the Original Amended Complaint.

the First Amended Complaint.  (Compare SAC ¶¶ 78-82, 155, 157, 168, 185-187 to [Original Amended Complaint] ¶¶ 77-84, 144, 149, 157, 159.)")  Plaintiffs not only failed to bolster their allegations against EFP, they made no material changes whatsoever.

Plaintiffs' reliance on the purported (and hearsay) expert opinion of Barry Jay Epstein, Ph.D., CPA, CFF, does not cure the deficiencies.  Beyond the fact that an expert disclosure has no place in a complaint and fails to bolster the factual allegations, Dr. Epstein expresses no opinion regarding the Shenzhen acquisition or EFP's conduct.

The District Court found Dr. Epstein's opinion was properly disregarded, stating "it was arguably inappropriate for Plaintiffs to incorporate expert testimony into [Plaintiffs'] Second Amended Complaint as a means of bolstering their allegations against the Auditor Defendants."  (A-246); *ABAT II*, 2013 U.S. Dist. LEXIS 102325, at *20 (citing *Highland Capital Mgmt., L.P. v. Schneider*, No. 02 Civ. 8098, 2004 U.S. Dist. LEXIS 18131 (S.D.N.Y. Sept. 9, 2004)).

The District Court went on to hold that even if it had considered the opinion, it failed to establish auditor scienter:

> However, Plaintiffs' allegations based on Dr. Epstein's expert opinion fail for another reason:  all that Dr. Epstein attests to is that the Auditor Defendants violated professional standards, which, standing alone, is insufficient to support a strong inference of recklessness approximating an actual intent to aid ABAT's underlying

> fraud . . . .  Furthermore, these allegations are pleaded in terms of negligence, and thus necessarily do not rise to the level of recklessness . . . .  Nothing in the case law suggests that a plaintiff can avoid these rules of law simply by retaining an expert willing to label an auditor's alleged misconduct under the applicable professional standards "extreme" or "willful."

(A-236-237); *ABAT II*, 2013 U.S. Dist. LEXIS 102325, at *20-21 (internal citations omitted).

Since Plaintiffs made little or no effort to bolster their allegations against EFP, they failed to meet the standard for leave to replead required by the Original Decision and Order, which has not been challenged or appealed by Plaintiffs.

### C.    *Plaintiffs' Allegations Regarding The Shenzhen Acquisition Do Not Establish Scienter*

The SAC essentially alleges that Fu secretly acquired Shenzhen prior to selling it to ABAT at a highly inflated price, and EFP failed to uncover the fraud. Such allegations are insufficient to plead auditor scienter as a matter of law.

### 1.    *Even Assuming EFP Would Have Discovered The Fraud Had It Conducted A More Thorough Investigation, Such Conduct Constitutes Negligence At Most And Is Insufficient To Establish Auditor Scienter*

The SAC does not, and cannot, allege EFP was aware of, but disregarded, fraudulent conduct, which is required to plead scienter.  Rather, the SAC's sole

allegation against EFP is that it would have uncovered the fraud had it evaluated certain documentation:

> [W]ith regard to the Shenzhen acquisition, [EFP] was required to collect and evaluate basic documentation concerning the transaction and to verify relevant details with third parties. As already detailed, had it done so, [EFP] would have easily uncovered that the transaction was a sham designed to siphon money from [ABAT].

(A-186; ¶ 168.) Thus, the SAC, at most, alleges negligence, which is insufficient to establish scienter as a matter of law.[3] Courts have uniformly rejected the notion

---

[3] An outside auditor's purported failure to obtain third-party confirmations or to investigate certain facts while conducting its audit constitutes negligence and does not establish scienter. *See*, *e.g.*, *Novak*, 216 F.3d at 309 ("[T]he failure of a non-fiduciary accounting firm to identify problems with the defendant-company's internal controls and accounting practices does not constitute reckless conduct sufficient for § 10(b) liability."); *Dsam Global Value Fund v. Altris Software*, 288 F.3d 385, 390 (9th Cir. 2002) (a failure to investigate, including the failure to obtain written confirmations, establishes "only a negligent audit rather than scienter"); *Goldman v. McMahan, Brafman, Morgan & Co.*, 706 F. Supp. 256, 259 (S.D.N.Y. 1989) (dismissing complaint alleging that auditor "'should have . . . independently confirmed and verified'" the legitimacy of certain transactions because "[a]t most, the allegations could only support an inference that [the auditor] might have acted negligently, and under no set of facts could these assertions give rise to the required inference of recklessness"); *O'Brien v. Price Waterhouse*, 740 F. Supp. 276, 281-282 (S.D.N.Y. 1990) (holding that accountant's alleged failure to "confirm" and "investigate" the "factual representations made to it by other defendants . . . does not create a strong inference of scienter, and at best states a claim for negligence"); *The Limited, Inc. v. McCrory Corp.*, 683 F. Supp. 387, 394 (S.D.N.Y. 1988) (concluding that allegations of GAAS violations due to an auditor's failure to investigate certain facts when it had "clear notice" of accounting irregularities did not establish scienter).

that an auditor "would have" discovered fraud if it had only taken additional steps, which is precisely what is alleged by Plaintiffs.[4]

As held in the Original Decision and Order, "for a red flag to support a strong inference of scienter, the auditor must have actually been aware of its existence; 'merely alleging that the auditor had access to the information by which it could have discovered the fraud is not sufficient.'" (A-119); *ABAT I*, 2012 U.S. Dist. LEXIS 123757, at *46 (citing *In re IMAX Sec. Litig.*, 587 F. Supp. 2d at 484).

The SAC failed to allege that EFP was aware of, but intentionally disregarded, ABAT's or Fu's scheme. Consequently, the District Court held in the Second Decision and Order that:

> Plaintiffs' allegations against EFP with respect to [the Shenzhen] transaction (see, e.g., SAC ¶ 187 [A-194]) are still deficient, because they amount to no more than allegations of professional negligence or shoddy auditing,

---

[4] *See, e.g.*, *South Cherry St.*, 573 F.3d at 112 (affirming dismissal of a complaint that was "replete with allegations that [defendant] 'would' have learned the truth as to those aspects of the [fraudulent] funds if [it] had performed the 'due diligence' it promised" and that if defendant "had asked various questions earlier, it would have further questioned the [fraudulent fund's] financial records or recognized the need to ask further questions"); *In re J.P. Jeanneret Assocs.*, 769 F. Supp. 2d 340, 354 (S.D.N.Y. 2011) ("Merely alleging that [the auditor] 'would' or 'could' or even 'should' have known of [the] fraud if only it had paid attention . . . is insufficient to make out a 10(b) claim."); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d at 416 (rejecting plaintiffs' reasoning that "had [the auditor] conducted a thorough investigation, [it] would have become aware of various red flags" as insufficient to allege scienter); *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 452-453 (S.D.N.Y. 2010) ("allegations of what the [auditors] 'would have determined'" had they only done additional procedures "are simply insufficient").

- 22 -

and therefore do not support a strong inference of auditor scienter . . . . Indeed, Plaintiffs' argument ultimately comes down to the following: 'had EFP done the bare minimum and obtained the underlying documentation for Shenzhen, it would have observed that Defendant Zhiguo Fu, the Company's Chairman and CEO, was involved in the transaction and profiting mightily from it' . . . . This argument echoes those asserted against [Bagell], and fails for the same reasons.

(A-241); *ABAT II*, 2013 U.S. Dist. LEXIS 102325, at *29. The contention that

EFP would have discovered the fraud had it conducted a more thorough

investigation of the Shenzhen acquisition (which did not even close until after the

audit period), even if true, is insufficient to plead auditor scienter as a matter of

law.

> 2.    *The Inference That The Circumstances Surrounding The Shenzhen Acquisition Were Concealed From EFP Is More Compelling Than The Inference That EFP Recklessly Disregarded Fraud*

The United States Supreme Court, in discussing the scienter element,

explained the test set forth in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S.

308, 314 (2007), as follows:

> [A] court . . . must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff, . . . but also competing inferences rationally drawn from the facts alleged. An inference of fraudulent intent may be plausible, yet less cogent than other, nonculpable explanations for the defendant's conduct. To qualify as "strong" . . . an inference of scienter must be more than merely plausible or reasonable--it must be cogent and at

- 23 -

least as compelling as any opposing inference of nonfraudulent intent.

Where, as here, the inference that the fraud was concealed from the auditors is more compelling than the inference that the auditors recklessly disregarded the fraud, the complaint fails to allege auditor scienter. *See*, *e.g.*, *Meridian Horizon Fund, LP*, 487 Fed. App'x at 641 ("[W]e agree with the district court that 'the more compelling inference as to why Madoff's fraud went undetected for two decades was his proficiency in covering up his scheme and deceiving the SEC and other financial professionals.'")

Because ABAT concealed Fu's interest in Shenzhen, the inference that EFP was kept in the dark, just as the investors were, is more compelling than the inference that EFP recklessly disregarded the fraud. The District Court reached the same conclusion with respect to a similar allegation that Bagell disregarded ABAT's fraud involving the 2009 acquisition of Wuxi Angell Autocycle Co. Ltd. ("Wuxi"). *ABAT I*, 2012 U.S. Dist. LEXIS 123757, at *55-58.

The Original Amended Complaint alleged Bagell failed to disclose that ABAT paid an excessive amount for Wuxi as part of an arrangement to enrich Fu. Relying on this Court's precedent, and specifically referencing the Shenzhen acquisition, the District Court found that such allegations were insufficient to establish scienter:

> Here, as in *Doral*, the only allegation going to Wuxi (***and Shenzhen, for that matter***) is that top management concealed secret interests in ABAT's acquisitions that would enrich them personally.   The inference that [Bagell] was kept as much in the dark as the investors is more compelling than the inference that [Bagell] recklessly disregarded clear signs of fraud.

(A-126); *id.* at *57-58 (emphasis added) (citing *West Virginia Inv. Mgmt. Bd. v. Doral Fin. Corp.*, 344 Fed. App'x 717, 720 (2d Cir. 2009) ("In this case, the opposing inference – that Doral concealed its fraud from [the auditor] just as it concealed its fraud from investors – is objectively more compelling than plaintiffs' allegations of recklessness")).

The SAC alleges, as with the Wuxi transaction, that ABAT concealed Fu's interest in Shenzhen as part of a scheme to personally enrich Fu.  Accordingly, the inference that the fraud was concealed from EFP was more compelling than the inference that EFP recklessly disregarded the fraud.

The District Court agreed, and in the Second Decision and Order held that the "'inference that [EFP, like Bagell,] was kept as much in the dark as the investors is more compelling than the inference that [EFP] recklessly disregarded clear signs of fraud' with respect to the Shenzhen transaction." (A-242); *ABAT II*, 2013 U.S. Dist. LEXIS 102325, at *29-30 (citing *Tellabs, Inc.*, 551 U.S. at 323-324; *West Virginia Inv. Mgmt. Bd.*, 344 Fed. App'x at 720)).

3.    *EFP Had No Duty To Report Fraud In Connection With The Shenzhen Acquisition Because It Did Not Close During The 2010 Audit Period*

The Shenzhen acquisition cannot constitute a red flag in connection with EFP's 2010 audit because the transaction did not close until 2011 – after the EFP audit period.

A plaintiff fails to adequately plead scienter where, as here, the alleged fraudulent activities do not occur during the time period for which an auditor issues an audit report. *Pennsylvania Ave. Funds v. Inyx, Inc.*, No. 08 Civ. 6857 (PKC), 2010 U.S. Dist. LEXIS 19177, at *41 (S.D.N.Y. Mar. 1, 2010) (the complaint failed to allege auditor scienter where "[m]ost of the alleged fraudulent activity occurred in 2006 and 2007, years for which Berkovits did not issue an audit report"); see generally *United States v. Arthur Young & Co.*, 465 U.S. 805, 811 (1984) (an independent auditor is obligated to issue "an opinion as to whether the financial statements, taken as a whole, fairly present the financial position and operations of the corporation for the relevant period.").

In the SAC (A-157; SAC ¶ 79), Plaintiffs concede the Shenzhen acquisition did not close until January 2011 – after the "relevant period" of EFP's audit report (*i.e.*, the year ended 2010). Because EFP did not report on any financial statements or transactions for any part of the year 2011, the Shenzhen acquisition cannot constitute a red flag as to EFP.

- 26 -

Indeed, the District Court found that the Shenzhen acquisition did not raise an inference of scienter as to Bagell because the transaction did not close until 2011. (A-125); *ABAT I*, 2012 U.S. Dist. LEXIS 123757, at *54 ("Plaintiffs' reliance on the suspicious circumstances of the Shenzhen acquisition – particularly, Defendant Fu's undisclosed interest in Shenzhen – is misplaced for a more fundamental reason: that transaction closed in January 2011, more than a year after the last period audited by [Bagell], which ended December 31, 2009.")

The District Court suggests that EFP may have had different obligations than Bagell because the acquisition was announced in 2010. The Original Amended Complaint, however, alleged that ABAT made a deposit toward the Shenzhen acquisition in 2009, a year for which Bagell conducted an audit, but the deposit was nonetheless insufficient "to place [Bagell] on notice of the suspicious circumstances surrounding the acquisition." (A-125); *id*. at *54.

Since EFP's audit was limited to 2010, it could not possibly have uncovered circumstances concealed by ABAT on a transaction that did not close until after the audit period. That the acquisition was announced, but not consummated, during the audit period is insufficient "to place [EFP] on notice of the suspicious circumstances surrounding the acquisition." (A-125); *see id*. at *54. EFP could not have had a duty to audit an acquisition that did not even occur during the relevant timeframe.

- 27 -

**D.** ***Plaintiff's Argument Regarding High Profit Margins Has Been Abandoned And The Allegations Do Not Otherwise Establish Scienter***

    1.    *Plaintiffs Have Abandoned Any Argument Related To High Profit Margins*

The argument that EFP disregarding fraud related to high profit margins has been abandoned on appeal. Where, as here, a party's notice of appeal challenges a ruling, but the party's brief on appeal contains no argument as to why that ruling was incorrect, such challenge is deemed waived or abandoned. *See generally Fresh Meadow Food Servs., LLC v. RB 175 Corp.*, 549 Fed. App'x 34, 36 (2d Cir. 2014) (the defendants abandoned challenge to the plaintiffs' claim by not briefing the issues and including them only in their statement of issues presented for review); *Otero v. Bridgeport Hous. Auth.*, 297 F.3d 142, 144 (2d Cir. 2002) (finding abandonment where notice of appeal challenged ruling, but brief contained no argument as to why that ruling was incorrect).

Plaintiffs do not allege in the SAC that EFP ignored ABAT's high profit margins, which allegedly constitutes a red flag. The Second Decision and Order (on Plaintiffs' motion for leave to file the SAC) confirmed this argument was not asserted against EFP. *ABAT II*, 2013 U.S. Dist. LEXIS 102325, at *10 ("Plaintiffs' sole surviving allegation against EFP is that it failed to disclose that ABAT's acquisition of Shenzhen was an instance of self-dealing.")

Regardless, Appellant's Brief fails to address the issue – it is only noted in the Statement of the Case, and not argued or asserted otherwise.  Accordingly, it should be deemed abandoned.

2.      *High Profit Margins Do Not Constitute A Red Flag Or, Alternatively, The Failure To Uncover Same Constitutes Negligence At Most*

Even if the Court were to consider Plaintiffs' allegation concerning ABAT's unrealistically high profit margins, such margins did not, standing alone, constitute a "red flag."  *See*, *e.g.*, *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 687 (6th Cir. 2004) (holding that rapid increases in accounts receivable relative to increases in revenue do not "constitute a red flag sufficiently blatant that fraudulent intent can be inferred"); *Chill*, 101 F.3d at 270 ("The fact that GE did not automatically equate record profits with misconduct cannot be said to be reckless . . . . '[A] well managed business that is growing should post 'record' profits on a regular basis.'"); *Securities and Exch. Comm'n v. Espuelas*, 579 F. Supp. 2d 461, 486 (S.D.N.Y. 2008) ("Large revenues, however, are not red flags that, when ignored, raise an inference of unreasonable conduct.")

The District Court, in the Original Decision and Order, agreed (with respect to Bagell), holding as follows:

> It has been held repeatedly in the courts of this Circuit that unprecedented operating success alone is not sufficient to put an auditor on reasonable notice of fraud.

See, e.g., *Novak*, 216 F.3d at 309; *Chill*, 101 F.3d at 270. Indeed, the far more suspicious success of Bernard Madoff's investment fund has been found by several Judges of this District not to constitute a "red flag" for outside auditors.  See, e.g., *Stephenson*, 768 F. Supp. 2d at 579-80.  Of course, this case differs somewhat because [Bagell] audited ABAT directly, while the auditor defendants in the cited Madoff cases audited funds that invested with Madoff.  But this is not a difference that makes a difference.  Here, as in the Madoff cases, [plaintiffs] allege that [Bagell] had access to documents that would have revealed the unlikelihood, and even impossibility, of the claimed success — the AIC filings and competitors' operating margins.  Of course [plaintiffs] do not allege how [Bagell] would or even could have had access to the operating margin information about ABAT's overseas competitors; that is not something auditors are normally required to analyze.

(A-124); *ABAT I*, 2012 U.S. Dist. LEXIS 123757, at *52-53.  The District Court further found that "the failure to [analyze competitors' operating margins] suggests negligence, at worst, not recklessness approaching an intent to assist in the continuation of the fraud."  (A-124); *id*. at 53.

Finally, as discussed above with respect to the Shenzhen acquisition, the inference that the fraud concerning high profit margins was concealed from the auditors is more compelling than the inference that the auditors recklessly disregarded the fraud.  *See*, *e.g.*, *Meridian Horizon Fund, LP*, 487 Fed. App'x at 641.

## CONCLUSION

For the above-stated reasons and authorities, the Judgment of the District Court denying Plaintiffs' motion for leave to file the SAC should be affirmed, together with such other and further relief as this Court deems just and proper.

**DATED:**   August 1, 2014                    **HISCOCK & BARCLAY, LLP**


By:   /s/ Gabriel M. Nugent
                    Gabriel M. Nugent
                    Paul A. Sanders

*Attorneys for Defendant-Appellee*
EFP Rotenberg, LLP
Office and Post Office Address
One Park Place
300 South State Street
Syracuse, New York 13202-2078
Telephone:   (315) 425-2836
Facsimile:   (315) 703-7361

# CERTIFICATE OF COMPLIANCE

I, **GABRIEL M. NUGENT**, not a party to the action, hereby certify that the foregoing Brief for Defendant-Appellee EFP Rotenberg, LLP complies with the type-volume limitation set forth in FRAP 32(a)(7). The total number of words in the Brief is 6,491.

**DATED:**    August 1, 2014                **HISCOCK & BARCLAY, LLP**

By:    /s/ Gabriel M. Nugent
                Gabriel M. Nugent
                Paul A. Sanders

*Attorneys for Defendant-Appellee*
EFP Rotenberg, LLP
Office and Post Office Address
One Park Place
300 South State Street
Syracuse, New York 13202-2078
Telephone:   (315) 425-2836
Facsimile:   (315) 703-7361