# 14-1410-cv

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

➤➤◄◄

IN RE: ADVANCE BATTERY TECHNOLOGIES, INCORPORATED

RUBLE SANDERSON,

*Plaintiff-Appellant,*

*and*

JAMES QUAN, JAMES M. BURNS, ARNOLD COHEN, GEOFF CONNORS,
GREGORY BONIN, Individually and on behalf of all others similarly situated,

*Plaintiffs,*

*v.*

ADVANCE BATTERY TECHNOLOGIES, INCORPORATED,
ZHIGUO FU, GUOHUA WAN, DAN CHANG,
BAGELL, JOSEPHS, LEVINE & CO., LLC, FRIEDMAN LLP, EFP ROTENBERG, LLP,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of New York (New York City)

## BRIEF FOR DEFENDANTS-APPELLEES
## BAGELL, JOSEPHS, LEVINE & CO., LLC,
## AND FRIEDMAN LLP

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
*Attorneys for Defendants-Appellees*
*Bagell, Josephs, Levine & Co., LLC,*
*and Friedman LLP*
1133 Westchester Avenue
White Plains, New York 10604
914-323-7000

## FRAP 26.1 Corporate Disclosure Statement

Defendant-Appellees Bagell, Josephs, Levine & Co., LLC and Friedman LLP state that there have no parent corporations or entities and no corporation or entity owns more than 10% of Bagel, Josephs, Levine & Co., LLC or Friedman LLP.

5155802v.1

# TABLE OF CONTENTS

**Page**

Issues Presented For Review ................................................. 1

Statement of the Case ........................................................ 2

    The Motion to Dismiss ................................................. 5

    The Decision Denying Leave to Amend ........................... 6

    The Notice of Appeal .................................................... 7

Summary of the Argument .................................................. 9

Argument ......................................................................... 12

I.    The District Court Correctly Concluded that Plaintiffs' Complaint Did Not Satisfy the PSLRA and Fed. R. Civ. Pro. 9(b) Pleading Standards ................. 18

    A.    The Original Complaint Does Not Allege Recklessness ....................... 19

    B.    The Purported Red Flags Are either Not Red Flags or Were Unknown to Bagell Josephs ................................................. 21

        a.    Red Flag #1: The fact that ABAT went public by virtue of a reverse merger was not a red flag at the time of the Friedman Audits ....................... 21

        b.    Red Flag #2: There are no allegations that ABAT knew of, and disregarded, inconsistent SEC and AIC filings ........................... 21

        c.    Red Flag #3: The Shenzhen Transaction occurred after the Friedman Audit Period .................................... 22

        d.    Red Flag #4: Change in the HLJ ZQPT Accounting ................... 22

        e.    Red Flag #5: High profit margins ................................. 23

ii

f.    Red Flag #6: Alleged related party transactions, the Shenzhen
Transaction and HLJ ZQPT characterization ..............................24

g.    Red Flag #7: High rates of auditor and CFO turnover .................24

C.    The Allegations Taken as a Whole Do Not Create an Inference of
Scienter on the Part of Bagell Josephs & More Plausible Opposing
Inferences .....................................................................................25

II.    The District Court Correctly Concluded that the Proposed Amended
Complaint Would Be Futile.................................................................28

A.    The Proposed Amended Complaint Still Lacked Sufficient Factual
Allegations Concerning Bagell Josephs' Scienter ..................................28

i.    Proposed Complaint Fails to Allege that Bagell Josephs
"Must Have" Reviewed the AIC Filings ...........................31

ii.    Allegations that "No Reasonable Auditor" would have
failed to review the AIC Filings is easily rebutted and
alleges, at best, negligence .................................................33

iii.    The Shenzhen Related Party Transaction is Not Relevant
to the Claim Against Bagell Josephs .................................37

B.    Proposed Complaint Fails to Allege Loss Causation as to Bagell
Josephs..........................................................................................38

C.    The Proposed Complaint Does Not Allege Both Objective and
Subjective Falsity ..........................................................................43

Conclusion .........................................................................................49

iii

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amorosa v. Ernst & Young, LLP,*
  682 F. Supp. 2d 351 (S.D.N.Y. 2010) ................................................................41

*Anwar v. Fairfield Greenwich Ltd.,*
  728 F. Supp. 2d 372 (S.D.N.Y. 2010) ................................................................26

*Ashcroft v. Iqbal,*
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ..................................12

*Athale v. SinoTech Energy Ltd.,*
  No. 11 Civ. 0531(AJN), 2014 U.S. Dist. LEXIS 22996, 2014 WL 687218
  (S.D.N.Y. Feb. 21, 2014) ............................................................................... 17, 26

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
  493 F.3d 87 (2d Cir. 2007) ...............................................................................12

*Bily v. Arthur Young & Co.,*
  3 Cal. 4th 370, 11 Cal. Rptr. 2d 51, 834 P.2d 745 (1992) ..................................44

*Buttonwood Tree Value Partners, LP v. Sweeney,*
  2012 U.S. Dist. LEXIS 80118 (C.D. Cal. 2012) ......................................... 46, 47

*Chill v. Gen. Elec. Co.,*
  101 F.3d 263 (2d Cir. 1996) ..............................................................................23

*City of Omaha, Neb. Civilian Employees' Ret. Sys. v. CBS Corp.,*
  679 F.3d 64 (2d Cir. 2012) ...............................................................................13

*City of Omaha, Neb. Civilian Emps.' Ret. Svs. v. CBS Corp.,*
  679 F.3d 64 (2d Cir. 2012) ...............................................................................44

*Cole v. Duoyuan Printing, Inc.,*
  2013 U.S. Dist. LEXIS 121034 (S.D.N.Y. 2013)...............................................46

iv

*Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co. is,*
   454 F.3d 1168 (10th Cir. 2006) ........................................................47

*W Va. Inv. Mgmt. Bd. v. Doral Fin. Corp. Doral Fin. Corp..*
   344 F. App'x 717 (2d Cir. 2009) ........................................................27

*Dura Pharms., Inc. v. Broudo,*
   544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005) ............................ 38, 39

*Fait v. Regions Fin. Corp.,*
   655 F.3d 105 (2d Cir. 2011) ........................................................ 13, 44

*Freidus v. Barclays Bank PLC,*
   734 F.3d 132 (2d Cir. 2013) ..........................................................44

*Hufnagle v. Rino Int'l Corp.,*
   2013 U.S. Dist. LEXIS 6095 (C.D. Cal. 2013) ...................................46

*In re aaiPharma Inc. Secs. Litig.,*
   521 F.Supp. 2d 507 (E.D.N.C. 2007) ........................................... 17, 30

*In re China Valves Tech. Sec. Litig.,*
   979 F. Supp. 2d 395 (S.D.N.Y. 2013) ..........................................46-47

*In re Colonial Bancgroup, Inc. Sec. Litig.,*
   Fed. Sec. L. Rep. (CCH) P97,906  U.S. Dist. LEXIS 40808 (S.D.N.Y.
   2014) ....................................................................................46

*In re IMAX Sees. Litig.,*
   587 F. Supp. 2d 471 (S.D.N.Y. 2008) ............................... 19, 30, 32, 36

*In re Iowa Pub. Emps. Ret. Sys.,*
   919 F. Supp. 2d 321 (S.D.N.Y. 2013) ................................................26

*In re Lehman Bros. Sec & ERISA Litig.,*
   799 F. Supp. 2d 258 (S.D.N.Y. 2011) ..................................... 44, 45, 46

*In re MRU Holdings Sees. Litig.,*
   769 F. Supp. 2d 500 (S.D.N.Y. 2011) ................................................19

v

*In re Omnicom Grp., Inc. Sec. Litig.*,
   597 F.3d 501, 510 (2d Cir. 2010) ....................................................................39

*In re Philip Servs.*,
   383 F. Supp. 2d 463 (S.D.N.Y. 2004) ........................................................ 35,36

*In re Puda Coal Secs., Inc.*,
   2014 U.S. Dist. LEXIS 83138 (S.D.N.Y. 2014)...........................................46

*In re Scholastic Corp. Sec. Litig.*,
   252 F.3d 63 (2d Cir. 2001) ...............................................................................12

*In re Tremont Sec. Law. State Law and Ins. Litig.*,
   703 F. Supp. 2d 362 (S.D.N.Y. 2010) ........................................ 16, 19, 27, 30, 32

*In re Williams Sec. Litig. – WCG subclass*,
   558 F.3d 1130 (10th Cir. 2009) .........................................................................39

*In re Winstar Commc'ns*,
   2006 U.S. Dist. LEXIS 7618, (S.D.N.Y. 2006)..............................................35

*Kleinman v. Elan Corp.*
   706 F.3d 145 (2d Cir. 2013) ..............................................................................13

*Kuriakose v. Fed. Home Loan Mtg. Corp.*,
   897 F. Supp. 2d 168 (S.D.N.Y. 2012) ...............................................................26

*Lattanzio v. Deloitte & Touche LLP*,
   476 F.3d 147 (2d Cir. 2007) ..............................................................................38

*Meyer v. Greene*,
   710 F.3d 1189, 1196 (11th Cir. 2013) ...............................................................39

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000) ................................................ 13, 15, 16, 19, 23, 35

*Perry v. Duoyuan Printing, Inc.*,
   No. 10 Civ. 7235(GBD), 2013 U.S. Dist. LEXIS 121034, (S.D.N.Y.
   2013) ...................................................................................................................26

vi

*Rombach v. Chang,*
   355 F.3d 164 (2d Cir. 2004) ..............................................................................13

*Rothman v. Gregor,*
   220 F.3d 81 (2d Cir. 2000) ....................................................... 15, 19, 29, 30, 32

*S.E.C. v. Gold,*
   2006 U.S. Dist. LEXIS 87042 (E.D.N.Y. 2006) ..................................................36

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris*
   *Cos.,*
   75 F.3d 801 (2d Cir. 1996) ...............................................................................13

*Scott v. ZST Digital Networks*
   2012 U.S. Dist. LEXIS 19392 (C.D. Cal. 2012) ..................................................30

*South Cherry St., LLC v. Hennessee Grp. LLC,*
   573 F.3d 98 (2d Cir. 2009) ................................................................... 15, 16, 17

*Stephenson v. v. Pricewaterhousecoopers,*
   768 F. Supp. 2d 562 (S.D.N.Y. 2011) ....................................17, 22, 26, 29, 35-36

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
   551 U.S. 308, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007) ............... 14, 15, 25-26

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*
   672 F. Supp. 2d 596 (S.D.N.Y.2009) ..................................................................35

*Va. Bankshares, Inc. v. Sandberg,*
   501 U.S. 1083, 111 S. Ct. 2749, 115 L. Ed. 2d 929 (1991) ...............................44

*Wilamowsky v. Take-Two Interactive Software, Inc.,*
   818 F. Supp. 2d 744 (S.D.N.Y. 2011) ..................................................................39

## STATUTORY AUTHORITIES

15 U.S.C. § 78u .......................................................................................................14

## RULES AND REGULATIONS

Fed. R. Civ. P. 9(b) ...............................................................................................ii, 12, 18

## Issues Presented For Review

(1) Did the District Court correctly dismiss Plaintiffs' complaint because the factual allegations set forth therein failed to create a strong inference of scienter?

(2) Did the District Court correctly deny Plaintiffs' leave to amend the complaint when the proposed amendment was futile because the factual allegations, examined individually and taken as a whole, failed to create a strong inference of scienter?

(3) Do the original complaint and proposed complaint each lack sufficient allegations of Loss Causation when the alleged corrective disclosures do not reference the defendant Bagell Josephs or the statements made by Bagell Josephs that are alleged to be misleading?

(4) Do the original complaint and proposed complaint both fail to allege both subjective and objective falsity as to the auditor opinions issued by Bagell Josephs, thus failing to state a claim under the securities laws?

1

## Statement of the Case

This is a securities fraud class action by investors against the auditors of

Advanced Battery Technologies, Inc. ("ABAT").  ABAT is a Chinese company,

whose operations are mainly in mainland China.  Among other things, ABAT

engages in the design, manufacturing and marketing of rechargeable batteries in

the United States, Europe and Asia.  [A-137]

As is relevant to the claims in this case Appellee-Defendant Bagell, Josephs,

Levine & Co., LLC ("Bagell Josephs") served as the company's auditor through

December 2010.  [A-138]  According to the [Proposed] Second Amended

Consolidated Class Action Complaint ("the Complaint"), in 2010 Bagell Josephs

merged with Friedman LLP and Friedman LLP took over the role of ABAT's

auditor until discharged on December 14, 2010.[1] [A-138]  Bagell Josephs issued

audit reports for the years ended December 31, 2007, 2008 and 2009.  [A-165-167]

Co-Defendant/co-appellee EFP Rotenberg conducted the audit for 2010 and issued

its own audit report thereon. [A-168]

As stated in the audit reports issued by Bagell Josephs and as generally

understood, "the consolidated financial statements are the responsibility of the

---

[1] For purposes of this motion and appeal, because the allegations in the Complaint must be accepted as true, Bagell Josephs and Friedman will not contest the allegation that the two entities merged and will collectively refer to the combined entity as "Bagell Josephs."

2

Company's management."  An auditor's "responsibility is to express an opinion on these financial statements." [A-166]

According to the complaint, ABAT's financial results reported to the SEC differed from those reported to the State Administration for Industry and Commerce in China ("AIC"). [A-151]  The AIC has central offices in each province.  The complaint explains that the AIC has two main functions: 1) administer the establishment and closing of companies, as well as to record corporate changes and 2) to monitor companies compliance with China's company laws and regulations.  [A-151].  Basically, the AIC is akin to a beefed up state level Secretary of State here in the U.S.  Plaintiffs allege that the filings made by various ABAT subsidiaries to the AIC differed substantially from the total amounts reflected for ABAT in its SEC filed annual reports. [A-151]

Plaintiffs alleged that the Auditors' Reports were false and misleading in three general ways: (1) the audits were not conducted in accordance with PCAOB standards, (2) ABAT's financial statements did not fairly present the financial position of the company, and (3) the Auditor Defendants' audits did not provide a reasonable basis for their opinions. [A-169]

As against the auditors, Plaintiffs brought one cause of action for violations of Section 10(b) of the Exchange Act of 1934 and Rule 10b-5 promulgated

3

thereunder. [A-178]  In support of this cause of action, Plaintiffs allege that the Auditor Defendants ignored or recklessly disregarded two specified red flags [A-181].  The two red flags identified in the complaint are (a) the discrepancy between the financial results reported to the SEC and to the AIC in China, and (b) that ABAT engaged in a related party transaction without disclosing it in its annual financial statements. [A-181] As identified later in the proposed complaint, the related party transaction occurred in 2010 – the year not audited by Bagell Josephs – thus, it is not applicable to the claim against Bagell Josephs. [A-194]

With regards to that part of the claim that the auditor defendants failed to properly conduct their audits in accordance with PCAOB standards, Plaintiffs cite a variety of generalized audit considerations such as that an auditor should exercise "due care" [A-182] and "professional skepticism." [A-183]  Plaintiffs do not cite any specific auditing procedures required by auditing standards in place at the time Bagell Josephs conducted its audits and allege facts concerning how Bagell Josephs' audit departed from that standard.  Moreover, there are no allegations that the audit opinions were both objectively and subjectively false at the respective times they were made.  Indeed, there are no allegations at all about Bagell Josephs' belief at the time of each of its audit opinions.

4

The closest Plaintiffs come to a specific factual allegation concerning the audits by Bagell Josephs is set forth in paragraph 166 of the proposed complaint in which Plaintiffs allege that "Bagell Josephs employees were personally present at ABAT's Chinese offices during their audit work for ABAT, and presumably relied on the same underlying financial records and data, such as documents necessary to substantiate ABAT's claimed revenues, that had formed the basis for ABAT's AIC filings. However, the same underlying financial records and data inexplicably yielded dramatically different results for ABAT's U.S. SEC filings." [A-185]  In other words, Plaintiffs allege that by virtue of being at ABAT's offices, the Bagell Josephs auditors would have seen both the real and allegedly fraudulent documents, which would have put them on notice of suspicious activity.

**The Motion to Dismiss**

All defendants moved to dismiss the First Amended Consolidated Class Action Complaint. The District Court granted the motion on behalf of the auditor defendants but denied the motion to dismiss as to the ABAT defendants. [A-92]. In a lengthy decision the District Court explained its rationale for granting the motion as to the auditor defendants. The District Court examined each of the purported red flags one by one and then *in toto* and concluded that the first complaint failed to sufficiently allege scienter as against Bagell Josephs.

5

**The Decision Denying Leave to Amend**

Plaintiffs moved for leave to amend the complaint attaching a proposed complaint. The District Court examined the proposed complaint and denied the motion to amend finding that the proposed complaint also failed to sufficiently allege scienter. [A-226] After noting the heightened pleading standards for alleging fraud against an auditor under the securities laws, the District Court examined the proposed complaint in detail.

Initially, the District Court examined the allegations attributed to Dr. Epstein as set forth in the complaint and concluded that those allegations sound in negligence rather than recklessness equivalent to fraud. [A-236] The District Court then examined the purported red flags one by one and addressed each one. With regards to the AIC filing discrepancy with the SEC filings, the Court correctly noted that the proposed complaint does not actually allege that Bagell Josephs was aware of the discrepancy. The Court explained that the allegations in the proposed complaint were not that Bagell "must have" seen the contradictory documents, but instead "should have" seen the documents. Moreover, this allegation is based on the fact that the auditors were in China auditing and thus were "presumably" in proximity with the true documents. However, as explained

6

by the Court, this allegation is not equivalent to an allegation that Bagell Josephs actually did or necessarily did have knowledge of the AIC documents.

Next, the District Court addressed the allegations with respect to the HLJ ZQPT transaction.  The court concluded that allegations in the complaint that Bagell Josephs should have done more to review related documentation did not rise to allegations of recklessness approximating an intent to commit fraud, but rather sounded in professional negligence.

**The Notice of Appeal**

Plaintiffs' Notice of Appeal states that they are only appealing from the decision denying plaintiffs leave to amend. [A-243]  Moreover, Plaintiffs' "Standard of Review" statement in their Brief addresses only an appeal of a denial of leave to amend. Brief pg. 24.  However, Plaintiffs' brief's "Introduction" appears to be addressing the original dismissal and the first two "Issues Presented for Review" address the dismissal order, whereas the third Issue Presented for Review address the denial of the leave to amend.  Additionally, Plaintiffs' Procedural History in the Statement of the Case states that the Notice of Appeal is of *both* the order granting the motion to dismiss and the order denying leave to amend (Brief pg. 8) – this is plainly not correct [A-243].  All but one of the citations to the record concerning the factual allegations are taken from the

7

[Proposed] Second Amended Consolidated Class Action Complaint [A-133 – 196]. Finally, the Argument section of Plaintiffs' brief makes no argument advancing an appeal of the dismissal of the original complaint.

In light of the inconsistent and contradictory indications of the issues presented on this appeal, out of an abundance of caution, Bagell Josephs will address both the dismissal of the original complaint and the denial of leave to amend. Many of the arguments and legal standards are applicable across both pleadings and duplication will be avoided.

8

## Summary of Argument

The issue presented to this Court is whether the original complaint and the proposed amended complaint sufficiently state a claim for securities fraud as against Bagell Josephs.  For several reasons, the pleadings fail to adequately state such a claim.

First, there are insufficient allegations concerning scienter as against Bagell Josephs.  As has been repeatedly explained by this and other courts, in a securities fraud case, the complaint must, with respect to each act or omission alleged to be fraudulent, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.  As against auditor defendants, the pleading standard is indeed high and plaintiffs must allege recklessness that, in fact, approximates an actual intent to aid in the fraud being perpetrated by the audited company.

Here, Plaintiffs allegations simply do not measure up to the necessary pleading standard.  They do not allege what audit procedures Bagell Josephs performed recklessly.  They do not allege what audit procedures Bagell Josephs recklessly omitted.  They do not allege anything about the conduct of the audit

9

other than that Bagell Josephs conducted an audit and was present at ABAT's offices in conducting its audit. These allegations are plainly insufficient, especially in light of the alternative, more compelling inference (cited by the District Court) that the company kept two sets of records.

Moreover, because Plaintiffs choose not to separate out the different defendants, the allegations concerning the "Auditor Defendants" must be picked apart to determine which allegations apply to which defendants. This is critical because certain red flags alleged by Plaintiffs occurred on the subsequent auditor's tenure and were not present during the time for which Bagell Josephs audited.

Therefore, taken individually and as a whole, the allegations as against Bagell Josephs simply do not create a strong inference of scienter.

The Second reason the claim should remain dismissed, although not reached by the District Court, is that the complaints fail to allege loss causation as against Bagell Josephs. While the complaints adequately allege loss causation as against ABAT itself by tying corrective disclosures to particular statements made by the company, no such effort was made with respect to the statements by Bagell Josephs. Absent factual allegations concerning loss causation in connection with the statements by Bagell Josephs, the complaints are not viable.

10

Finally, Plaintiffs fail to plead that the statements attributed to Bagell Josephs were both subjectively and objectively false. As audit opinions are inherently opinion statements, a plaintiff must plead that the speaker did not believe the opinion when made or knew of no reasonable basis for such belief (subjective falsity), and that the underlying fact was false (objective falsity). Here, there is simply no attempt to plead both subjective and objective falsity.

Although the District Court dismissed the claims and refused leave to amend based solely on the scienter rationale, each of the above reasons is an independent reason to affirm the decisions below.

11

## Argument

A complaint must plead claims that are "plausible on [their] face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation marks omitted). A facially plausible claim is one in which "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In addition, private securities fraud claims must meet heightened pleading requirements. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). Indeed, a securities fraud claim must be pleaded pursuant to Fed. R. Civ. P. 9(b), "which requires that the circumstances constituting fraud . . . shall be stated with particularity." *Id.* (quotation marks omitted).

To adequately allege falsity, a plaintiff must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 69 (2d Cir. 2001) (alteration in original). To show actionable falsity, "plaintiffs must do more than say that the statements . . . were false and misleading; they must demonstrate with

12

specificity why and how that is so." *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004); *accord Kleinman v. Elan Corp., plc,* 706 F.3d 145, 152-53 (2d Cir. 2013).

An allegedly material misstatement must have been false at the time that it was made. *See San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 812-13 (2d Cir. 1996) (explaining that "plaintiffs have not alleged circumstances to show that the defendants lacked a reasonable basis for their optimistic, but qualified predictions as to the company's future performance"). A statement that was believed to be true when made, but was later shown to be false, is insufficient; there is no actionable falsity in such a circumstance. *See id.* Put another way, without contemporaneous falsity, there can be no fraud. *See Novak*, 216 F.3d at 309 (explaining that "fraud by hindsight" is not actionable). Falsity is not a misapprehension, misunderstanding, or mistake of fact at the time a statement was made. *See, e.g., San Leandro*, 75 F.3d at 813.

When a plaintiff asserts that statement of belief or opinion was false, "liability lies only to the extent that the statement was both objectively false and disbelieved by the defendant at the time it was expressed." *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110 (2d Cir. 2011): *see City of Omaha, Neb. Civilian Emps.' Ret. Svs. v. CBS Corp.*, 679 F.3d 64, 67-68 (2d Cir. 2012) (stating that the same reasoning applies under Section 10(b)).

Additionally, plaintiffs must also plead scienter.  Scienter is the "mental state embracing intent to deceive, manipulate, or defraud" by the maker of a statement. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007).  Furthermore, private securities fraud claims must also satisfy the requirements of the Private Securities Litigation Reform Act ("PSLRA").  *Id.* Under the PSLRA, "[i]n pleading scienter in an action for money damages requiring proof of a particular state of mind, 'the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id.* (*quoting* 15 U.S.C. § 78u-4(b)(2)). A plaintiff may satisfy the PSLRA's pleading requirements for scienter by alleging facts that either (1) show that the defendant had both the "motive and opportunity" to commit the alleged fraud, or (2) constitute "strong circumstantial evidence of conscious misbehavior or recklessness." *Id.*

A "strong inference" is one that is "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc.,* 323. When determining whether the facts alleged by a plaintiff support a "strong inference" of scienter, "a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as

14

inferences favoring the plaintiff." *Id*. at 323-24. A reviewing court must assess all of the allegations holistically, not individually. *Id*. at 326. As the Supreme Court has noted, the ultimate inquiry is: "When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *Id*. at 326.

As this Court has observed, "[f]or recklessness on the part of a non-fiduciary accountant to satisfy securities fraud scienter, such recklessness must be conduct that is highly unreasonable, representing an extreme departure from the standards of ordinary care." *Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir. 2000) (quotation marks omitted). Such recklessness "must, in fact, approximate an actual intent to aid in the fraud being perpetrated by the audited company." *Id.* (quotation marks omitted); *see also South Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 110 (2d Cir. 2009) (same).

However, the reckless conduct must be "at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000) (internal quotation marks omitted). Applying this standard, this Court has "found allegations of recklessness to be sufficient where

plaintiffs alleged facts demonstrating that defendants failed to review or check information that they had a duty to monitor, or ignored obvious signs of fraud." *Id.* "At the same time, however, [this Court] ha[s] identified several important limitations on the scope of . . . fraud [claims] based on reckless conduct." *Id.* at 309; *see also South Cherry St., LLC v. Hennessee Grp., LLC*, 573 F.3d 98, 110 (2d Cir. 2009). In particular, "there are limits to the scope of liability for failure adequately . . . [to] monitor the allegedly fraudulent behavior of others." *Novak*, 216 F.3d at 309. "[T]he failure of a non-fiduciary accounting firm to identify problems with [a company's] internal controls and accounting practices does not constitute reckless[ness]." *Id.* Likewise, "allegations of [generally accepted accounting principles] violations or accounting irregularities, standing alone, are insufficient to state a . . . fraud claim" absent "evidence of corresponding fraudulent intent." *Id.* (internal quotation marks omitted).

Apart from pleading that an audit was so shoddy as to constitute "no audit at all," a complaint may sufficiently plead that an auditor acted recklessly by alleging that the "auditor disregarded specific 'red flags' that would place a reasonable auditor on notice that the audited company was engaged in wrongdoing to the detriment of its investors." *In re Tremont Secs. Law, State Law and Ins. Litig.*, 703 F. Supp. 2d 362, 370 (S.D.N.Y. 2010).  But pleading the existence of red flags

16

does not establish that a defendant was aware of those warning signals. *See South Cherry St.*, 573 F.3d at 112 (holding that a complaint failed to allege scienter where it was "replete with allegations that [the defendant] 'would' have learned the truth" regarding a company's fraudulent conduct "if [it] had performed" the "'due diligence'" that it "promised" to the plaintiff) (emphasis added). Indeed, the law is clear that "[a]n unseen red flag cannot be heeded," *Stephenson*, 768 F. Supp. 2d at 573, and, as another court put it, "the fact that 'a person has broad access to every book in a library does not mean that the person has read and chosen to ignore facts contained in a particular book in the library.'" *Athale v. SinoTech Energy Ltd.*, No. 11 Civ. 0531 (AJN), 2014 U.S. Dist. LEXIS 22996, 2014 WL 687218, at *7 (S.D.N.Y. Feb. 21, 2014) (*quoting In re aaiPharma Inc. Secs. Litig.*, 521 F. Supp. 2d 507, 513 (E.D.N.C. 2007)).

Finally, in assessing the allegations set forth in this case in either the complaint or the proposed amended complaint, it is important to maintain the distinction between the two distinct auditor defendants. Too often, Plaintiffs argue some fact or some red flag as against the "Auditor Defendants" without regard to the fact that only a limited number of supposed red flags were actually present during Bagell Josephs' audit. The other events occurred after the Bagell Josephs audit and should not be considered in evaluating the complaint as against Bagell

17

Josephs.  Indeed, the complaints do not differentiate whatsoever between the two sets of auditors.  Thus, the allegations are made as if both the Bagell Josephs' auditors and the EFP Rotenberg auditors conducted the exact same audit year after year and were privy to the exact same information year after year.  This is plainly not only implausible, but impossible, even according to the allegations in the complaints.  From year to year, the financial information changed and, at least to some extent, it is the cumulative effect of the information that Plaintiffs allege to have a bearing on the allegations.

## I.  The District Court Correctly Concluded that Plaintiffs' Complaint Did Not Satisfy the PSLRA and Fed. R. Civ. Pro. 9(b) Pleading Standards

Although it appears that Plaintiffs are not appealing the dismissal of the original complaint, the ambiguity in their brief compels Bagell Josephs to briefly address that issue.

The District Court correctly found that the allegation concerning scienter on the part of Bagell Josephs set forth in the original complaint were insufficient as a matter of law.  That complaint purported to allege scienter based upon recklessness and ignored red-flags.  However, examining the actual factual allegations reveals that (1) plaintiffs do not allege reckless conduct that is "at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the

18

5155802v.1

defendant or so obvious that the defendant must have been aware of it." *Novak*,

supra, 308; and (2) the alleged red flags are either not red flags at all or they were

not known to Bagell Josephs at the time of the audit.

## A. The Original Complaint Does Not Allege Recklessness

As this Court has explained,

> For recklessness on the part of a non-fiduciary accountant to satisfy securities fraud scienter, such recklessness must be conduct that is highly unreasonable, representing an extreme departure from the standards of ordinary care. It must, in fact, approximate an actual intent to aid in the fraud being perpetrated by the audited company.

*Rothman*, 220 F.3d at 98. Or, as another common formulation has it:

> [P]laintiff must allege that the accounting practices were so deficient that the "audit amounted to no audit at all, or an egregious refusal to see the obvious, or investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts."

*In re Tremont Sec. Law. State Law and Ins. Litig.*, 703 F. Supp. 2d 362, 370

(S.D.N.Y. 2010) (quoting *Scottish Re*, 524 F. Supp. 2d at 385); *see also Beacon*,

745 F. Supp. 2d at 415-16; *In re IMAX Secs. Litig.*, 587 F. Supp. 2d 471, 483

(S.D.N.Y. 2008)); *In re MRU Holdings Secs. Litig.*, 769 F. Supp. 2d 500, 518

(S.D.N.Y. 2011).  Negligence alone, or a "shoddy audit," will not suffice. *MRU*,

769 F. Supp. 2d at 518 (*citing Tremont*, 703 F. Supp. 2d at 371).

19

The factual allegations set forth in the original complaint do not allege recklessness, but instead allege that Bagell Josephs was negligent in its audit. The original complaint is replete with allegations that had Bagell Josephs gone further with its audit procedures, it might have discovered something suspicious. [A-72 – 75]. For example, Plaintiffs allege that "the Auditor Defendants also violated PCAOB standards by failing to gather audit evidence to substantiate ABAT's claimed customer relationships." [A-74]. Plaintiffs go on to allege that had the Auditor Defendants conducted such an investigation, it would have revealed that the "poor quality of the [ABAT] product and the deficiencies in the ABAT facilities as ABAT's customers have observed, which would have also alerted the Auditor Defendants to the improbability of ABAT's reported margins." In sum, Plaintiffs allege here and in their other "examples" that had the Auditor Defendants conducted a better audit, they might have uncovered evidence that called into question other aspects of the financial statements. These type allegations are hardly equivalent to allegations equivalent to "no audit at all."

Even as buttressed by incorporating a purported expert's conclusions, Plaintiffs' allegations still lack the factual statements necessary to reach the actual inference that the audit procedures were conducted recklessly approximating an intent to deceive. In fact, by alleging that the various audit procedures were

20

performed, but that they were not performed with the degree of skill and care that Plaintiffs' expert contends should have been used, Plaintiffs are setting forth a professional negligence claim – not a securities fraud claim.

### B. The Purported Red Flags Are either Not Red Flags or Were Unknown to Bagell Josephs

Each of the purported red flags cited in the original complaint either do not apply to Bagell Josephs, or could not constitute "red flags" sufficient to establish that the audit was a farce.  Plaintiffs set forth their list of red flags at A-71.

   a.    Red Flag #1: The fact that ABAT went public by virtue of a reverse merger was not a red flag at the time of the Friedman Audits

This red flag is not a red flag for Bagell Josephs. According to the complaint, Chinese Reverse Mergers did not come under heightened scrutiny until 2011 at the earliest.  [A-32 – 36].  Regardless of the justification of the recent scrutiny, it cannot be argued that at the time that Bagell Josephs conducted its audits for 2007 - 2009, they disregarded these cautionary articles.  This is a nonexistent red flag.

   b.    Red Flag #2: There are no allegations that Bagell Josephs knew of, and disregarded, inconsistent SEC and AIC filings

Plaintiffs do not allege that Bagel Josephs consciously disregarded this "red flag." Instead, the complaint alleges that "[Bagell Josephs] *should* have included ABAT's AIC filings in its compilation of audit evidence." A-75 (emphasis added).

21

An allegation of mere access to information is insufficient. Plaintiffs must, but fail to, allege that Bagell Josephs actually reviewed the filings and omitted any adverse conclusion with fraudulent intent. *See Stephenson*, 768 F. Supp. at 623.  As noted by the District Court, "[p]laintiffs do not allege, for example, that Bagell Josephs was involved in preparing ABAT's AIC filings, or that it advised ABAT with respect to its overseas subsidiary's accounting."  A-121  Absent allegations that Bagell Josephs was aware of the discrepancies, the AIC filings can not serve as a red flag.  *See Stephenson*, 768 F. Supp.2d at 573 (an "unseen" red flag cannot support a securities fraud claim).

      c.      Red Flag #3: The Shenzhen Transaction occurred after the Friedman Audit Period

The Shenzhen Transaction occurred after Bagell Josephs resigned as ABAT's auditor. As such, regardless of the nature of that transaction, the transaction cannot be alleged as a red flag for Bagell Josephs.

      d.      Red Flag #4: Change in the HLJ ZQPT Accounting

This is the only allegation that the District Court considered a "potential" red flag.  As described in the complaint, HLJ ZQPT was identified in the audit reports issued by Bagell Josephs as a subsidiary of ABAT during the period Bagel Josephs served as auditor.  In the annual report for 2009, the description of the ownership

22

was changed to reflect that HLJ ZQPT was, in fact, owned by the Chairman of ABAT and related parties, but that all of the contractual obligations and benefits were assigned to ABAT, thus effectively making it a subsidiary in all but name. It should be noted that this disclosure is not part of the allegations of fraud as it was corrected well before the alleged financial misstatements were disclosed. Plaintiffs' theory is that this change in ownership disclosure should have prompted Bagell Josephs to investigate more thoroughly other aspects of ABAT's reporting.

The District Court explained that a subsequent disclosure correcting a previous disclosure does not equate to knowledge that the previous disclosure was made recklessly. In addition, even if the change in ownership disclosure should have caused Bagell Josephs to investigate further, it would not imply that their previous audit statements were fraudulent. The District Court correctly noted that the nature of the correction is not one that would be a "red flag" indicative of fraud because the correction was examined and explained by the Company.

e.    Red Flag #5: High profit margins

A failure to interpret extraordinary positive performance as potential misconduct does not amount to recklessness under the securities laws. *See Novak*, 216 F.3d at 309; *See also Chill v. Gen. Elec. Co.*, 101 F.3d 263, 270 (2d Cir. 1996) ("the fact that GE did not automatically equate record profits with misconduct

23

cannot be said to be reckless.")  As the District Court noted, there are no allegations or indicia that Bagell Josephs was aware of the profit margins of other China based rechargeable battery conglomerates.  Absent factual allegations that these revenues were so outlandish so as to be indicative of fraud to Bagell Josephs, the numbers themselves are not a red flag.

      f.      Red Flag #6: Alleged related party transactions, the Shenzhen Transaction and HLJ ZQPT characterization

Here, the original complaint notes that the "Auditor Defendants" violated PCAOB standards by "failing to determine and disclose" related party transactions. The related party transactions cited in the complaint involve Shenzhen and HLJ ZQPT and are redundant of the third and fourth red flags. A-81 Again, the Shenzhen transaction occurred after Bagell Josephs' resignation. And, as described above, the HLJ ZQPT transaction was not a related party transaction, but instead a re-characterization of ownership for accounting purposes. Notwithstanding the fact that the only "transaction" occurred after Friedman's last audit report, these alleged "red flags" do not support an inference of fraud.

      g.      Red Flag #7: High rates of auditor and CFO turnover

The auditor turnover is not specifically described in the complaint, but it clearly refers to the switch from Bagell Josephs to Friedman and then to

24

Rotenberg.  Bagell Josephs combination with Friedman is not a change in auditor and does not constitute "turnover." To imply otherwise is misleading.  Thus as against Bagell Josephs, there is no "auditor turnover."  As for CFO turnover, Plaintiffs do not allege any specific turnover that would be indicative of fraud.

### C.  The Allegations Taken as a Whole Do Not Create an Inference of Scienter on the Part of Bagell Josephs & More Plausible Opposing Inferences

In addition to examining each of the purported red flags and the allegations concerning recklessness, a court should examine the complaint as a whole to determine if the allegations taken together create a strong inference of an intent to deceive.  The Supreme Court elaborated on what is meant by a "strong inference" in *Tellabs*, where it explained;

> The strength of an inference cannot be decided in a vacuum. The inquiry is inherently comparative: How likely is it that one conclusion, as compared to others, follows from the underlying facts? To determine whether the plaintiff has alleged facts that give rise to the requisite "strong inference" of scienter, a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff. The inference that the defendant acted with scienter need not be irrefutable, i.e., of the "smoking-gun" genre, or even the "most plausible of competing inferences." Yet the inference of scienter must be more than merely "reasonable" or "permissible" — it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.

25

*Tellabs*, at 323-24 (emphasis added). "In sum," the Supreme Court concluded, "the reviewing court must ask: When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *Id.*

Here, taken as a whole, Plaintiffs' allegations amount to a theory that, had Bagell Josephs performed a higher quality audit, i.e., one that complied with GAAS and PCAOB standards, it would have unearthed red flags indicative of ABAT's wrongdoing. Yet, it is well-established that an accusation that a defendant "merely ought to have known" is insufficient to allege recklessness. *Kuriakose v. Fed. Home Loan Mtg. Corp.*, 897 F. Supp. 2d 168, 184 (S.D.N.Y. 2012); *Athale*, 2014 U.S. Dist. LEXIS 22996, 2014 WL 687218, at *7; *Iowa Pub. Emps. Ret. Sys.*, 919 F. Supp. 2d at 332; *Perry v. Duoyuan Printing, Inc.*, No. 10 Civ. 7235 (GBD), 2013 U.S. Dist. LEXIS 121034, 2013 WL 4505199, at *7 (S.D.N.Y. Aug. 22, 2013); *Stephenson*, 768 F. Supp. 2d at 568.

Based upon the information allegedly available to Bagell Josephs or information that it should have known, rather than recklessness, the more compelling inference is that ABAT deceived Bagell Josephs, or that Bagell Josephs was "merely negligent in the exercise of professional duties." *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 451-54 (S.D.N.Y. 2010). Plaintiffs'

26

own allegations indicate that for years, ABAT effectively concealed its dealings with related parties; the fraud was a "tightly-held secret." *Doral Fin. Corp.*, 344 F. App'x at 720 (finding plaintiffs' allegations that auditor should have uncovered clandestine side agreements undermined by allegation that "these agreements were a tightly-held secret," only known to a few top-level managers; because "these agreements were kept secret even from Doral's employees, it seems more plausible that [the audited company's] managers concealed them from Pricewaterhouse than that Pricewaterhouse recklessly failed to discover them."); *In re Tremont*, 703 F. Supp. 2d at 371 ("[T]he more compelling inference as to why Madoff's fraud went undetected for two decades was his proficiency in covering up his scheme and eluding the SEC and other financial professionals.").

Further support is offered by the fact that Bagell Josephs was discharged as auditor by ABAT.  If Bagell Josephs was complicit in the alleged fraud perpetrated by ABAT, it would have continued on as auditor.  ABAT would not have risked firing a co-conspirator.  Similarly, if Bagell Josephs was conducting a reckless audit such that it was equivalent to "no audit at all," and allowing ABAT to succeed in its alleged fraud, ABAT would not have discharged Bagell Josephs, but instead continued on with a recklessly inept auditor.  The fact that ABAT discharged Bagell Josephs in December 2010 and hired another auditor supports

27

the more compelling inference that there was no intent to deceive on the part of Bagell Josephs.

Therefore, because the allegations set forth in the original complaint fail to sufficiently set forth factual allegations concerning scienter, the District Court correctly granted the Bagell Josephs motion to dismiss.

## II. The District Court Correctly Concluded that the Proposed Amended Complaint Would Be Futile

The District Court treated Plaintiffs' motion to amend the pleadings and Bagell Josephs' opposition thereto as the equivalent of a motion to dismiss and analyzed the proposed new complaint under a motion to dismiss standard. Under that standard, the District Court found that the amendment would be futile because Plaintiffs again failed to allege facts sufficient to satisfy the scienter pleading standards.

### A. The Proposed Amended Complaint Still Lacked Sufficient Factual Allegations Concerning Bagell Josephs' Scienter

As discussed above, for recklessness on the part of a non-fiduciary accountant to satisfy securities fraud scienter, such recklessness must be conduct that is highly unreasonable, representing an extreme departure from the standards of ordinary care. It must, in fact, approximate an actual intent to aid in the fraud

28

being perpetrated by the audited company. *Rothman*, 220 F.3d at 98. In Plaintiffs' proposed complaint, they only identify two alleged red flags: a) the discrepancy between the SEC and AIC filings and b) the related party transactions, especially the Shenzen transaction. A-181 Not surprisingly, Plaintiffs abandoned the numerous other red flags that were identified in the original complaint that were easily rejected by the District Court. Moreover, they plead these two red flags against the "Auditor Defendants" but only one could even possibly apply to Bagell Josephs – the SEC / AIC discrepancy. Even then, it is not a red flag for purposes of a scienter analysis.

A prerequisite for an auditor ignoring red flags is the fact that it must be aware of the red flag. Indeed, one cannot ignore what one does not know about. *See, Stephenson, supra*. Here, there are no factual allegations that Bagell Josephs was aware of the discrepancy between the AIC filings and the SEC annual report. Instead, the Proposed Complaint states, "Had Bagell Josephs included the AIC filings in its audit evidence, it would have easily uncovered ABAT's fraudulent financial reporting." A-185; also A-180, para. 152 "Had Bagell Josephs undertaken the basic task of reviewing AIC filings…." Thus, it appears that Plaintiffs plead that Bagell Josephs did not review the AIC filings. Because the proposed

29

complaint pleads that Bagell Josephs was not aware of the purported red flag, that red flag can not be indicative of auditor scienter.

Several courts have now had the opportunity to address similar allegations concerning auditor access to AIC filings.  For example, in *ZST Digital Networks*, the Court concluded that merely alleging discrepancies between the AIC and SEC filings is insufficient to plead auditor scienter. *ZST Digital Networks*, 2012 U.S. Dist. LEXIS 19392, *29-*32 (C.D. Cal. Feb. 14, 2012). Specifically, the Court found that the Plaintiff failed to allege that the auditor "had any knowledge of the existence of the SAIC reports, nor that it ignored their divergent revenue figures…." *Id.* There, merely citing the auditor's experience in China was insufficient to show the auditor's knowledge. *Id.* Similarly, Plaintiffs, here, merely add allegations that Bagell Josephs' personnel conducted audit field work in China and, therefore, should have had access to the AIC filings. However, merely alleging access to the Company's records does not mean the auditors actually reviewed the AIC filings. *See IMAX*, 587 F. Supp.2d at 483; *Rothman*, 220 F.3d at 98; *Tremont*, 703 F. Supp. 2d at 370-71. "Merely because a person has broad access to every book in a library does not mean that person has read or chosen to ignore facts contained in a particular book in the library." *aaiPharma*, 521 F. Supp. 2d at 513 (*cited by Tremont*, 703 F. Supp. 2d at 370-71).

In its brief, Plaintiffs' argument shifts.  Now, Plaintiffs argue that ABAT kept one set of books and did not provide misleading information to the auditors.  Thus, Plaintiffs argue that Bagell Josephs must have seen the true books in conducting its audit.  However, for some unknown reason, Bagell Josephs, year after year, choose to ignore the true financial information and issue clean audit opinions.  Indeed, according to Plaintiffs brief, the plausible inference is that "the same underlying financial data generated two wildly inconsistent sets of regulatory filings in terms of reported financials."  Thus, Bagell Josephs must have seen the underlying data that made up the AIC filings.  This is not only the least plausible interpretation of the events, but is just plain naïve.

The more plausible inference is that ABAT was perpetrating a fraud and misleading its auditors about its financial results.   Indeed, it is far more plausible that ABAT showed Bagell Josephs documents and information that supported the numbers in the SEC filed financial statements.

i.    Proposed Complaint Fails to Allege that Bagell Josephs "Must Have" Reviewed the AIC Filings

As an alternative to demonstrating Bagell Josephs' actual review of the AIC filings, this Court noted that a complaint may survive "only where the complaint gives rise to an inference that the auditor 'must have' reviewed them."  In that contest, "must have" should be read to mean "must have had" reviewed the

31

documents, not "should have" reviewed the documents.  The District Court offered two examples of such situations: (1) Bagell Josephs being involved in preparing ABAT's AIC filings or (2) that Bagell Josephs advised ABAT with respect to its overseas subsidiary's accounting.  Plaintiffs do not, and cannot, allege either scenario in their Proposed Complaint.  Instead, Plaintiffs opted to allege that Bagell Josephs "must have" reviewed the AIC filings by virtue of their potential access to the AIC filings.

To purportedly demonstrate that Plaintiffs "must have" reviewed the AIC filings, Plaintiffs add allegations that a former Bagell Josephs auditor confirmed to Plaintiffs that Bagell Josephs staff auditors, including some native Chinese speaking auditors, travelled to ABAT's facilities in China to conduct the audit and had access to ABAT's records. [A-178-79]  However, as noted above, merely alleging mere access is wholly insufficient to show that Bagell Josephs "must have" reviewed the AIC filings. *See IMAX*, 587 F. Supp. 2d at 483; *Rothman*, 220 F.3d at 98; *Tremont*, 703 F. Supp. 2d at 370-71. Moreover, Plaintiffs' contention that Bagell Josephs must have seen the AIC filings simply because they went to China is wholly inconsistent with Plaintiffs' overall theory that Bagell Josephs conducted the equivalent of "no audit at all." Viewed in this light, Plaintiffs' contention is absurd.

32

    ii.    Allegations that "No Reasonable Auditor" would have failed to review the AIC Filings is easily rebutted and alleges, at best, negligence

Since Plaintiffs cannot allege that Bagell Josephs actually reviewed the AIC filings and, thus, cannot allege that the auditors disregarded a red flag, Plaintiffs attempt to elevate the failure to review the AIC filings to the level of recklessness by labeling that failure an "extreme departure from professional standards" because "no reasonable auditor would have failed to obtain ABAT's AIC filings and reconcile them with ABAT's wildly divergent SEC filings." However, these conclusory allegations amount to nothing more than Plaintiffs alleging that the auditor "should have" reviewed them, i.e. negligence, which is insufficient to allege scienter.

To support their "no reasonable auditor" argument, Plaintiffs rely upon the potential testimony of their retained expert Dr. Barry Jay Epstein. Dr. Epstein is cited in the Proposed Complaint, without an accompanying affidavit, for the following three propositions:

    •    "According to Dr. Epstein, no reasonable auditor would have failed to obtain ABAT's AIC filings and reconcile them with ABAT's wildly divergent SEC filings." [A-180, para. 149].

33

- "According to Dr. Epstein, Bagell Josephs should have included ABAT's AIC filings in its compilation of audit evidence, and its failure to do so constituted an extreme departure from the standards of reasonable care for this auditor." [A-185, para. 164].

- "According to Dr. Epstein, the nature and magnitude of the alleged fraudulent financial reporting at ABAT were such that there is the strongest implication that the auditors failed utterly to assess the risk of fraud as required under GAAS." [A-189, para. 175].

As a preliminary matter, Plaintiffs do not allege that Dr. Epstein has any experience auditing Chinese companies. Moreover, Plaintiffs do not allege how auditing practices in the U.S., which presumably form the basis for Dr. Epstein's opinions, compare to, or differ from, auditing practices in China. Further, Plaintiffs do not allege how the auditing practices in China have changed between the time of Bagell Josephs' audits and the present. Instead, Plaintiffs offer some limited, conclusory allegations concerning what Dr. Epstein might opine upon that explain nothing and establish nothing.  Finally, Plaintiffs offer no rationale as to why conclusory allegations purportedly offered by an expert in a complaint carry more weight than conclusory allegations in general.

34

The remaining two allegations involving Dr. Epstein amount to conclusory assertions of negligence. Adding the word "extreme" to alleged departures from professional standards does not change the fact that Dr. Epstein is merely alleging that Bagell Josephs "should have" included the AIC filings in its compilation of audit evidence.  Additionally, Bagell Josephs' alleged violation of GAAS in failing to uncover a risk of fraud at ABAT is nothing more than a claim of potential negligence and does not come close to rising to the level of auditor scienter. As has been repeatedly held, violations of PCAOB standards do not amount to violations of the securities law absent accompanying factual evidence of corresponding fraudulent intent. *Novak*, 216 F.3d at 309.

Unlike circumstances under which courts have found that an auditor knew of a red flag, this is not a case where the company's own filings "explicitly disclosed problems with internal controls," *Stephenson*, 768 F. Supp. 2d at 579 (*citing Varghese*, 672 F. Supp. 2d at 602, 610), where the auditor possessed "all the paperwork associated with the claimed bogus transactions," *id*. (*citing In re Winstar Commc'ns*, No. 01 Civ. 3014 (GBD), 2006 U.S. Dist. LEXIS 7618, 2006 WL 473885, at *11 (S.D.N.Y. Feb. 27, 2006)), where the auditor directly knew of the suspect transactions, *id*. (*citing In re Philip Servs*., 383 F. Supp. 2d at 475), or where the auditor actively played a role in developing the company's deficient

accounting practices. *Id*. (*citing In re IMAX*, 587 F. Supp. 2d at 484). *See also In re Livent*, 151 F. Supp. 2d at 428-29 (finding allegations of auditor scienter sufficient where plaintiffs established, among other things, that Deloitte knew of numerous questionable practices performed by audited company, but failed to expand its sampling, and, despite Deloitte's own expressed concerns about the audit, "continually changed the account officers in charge ... to new, inexperienced staff"); *S.E.C. v. Gold*, No. 05 Civ. 4713 (JS) (MLO), 2006 U.S. Dist. LEXIS 87042, 2006 WL 3462103, at *5 (E.D.N.Y. Aug. 18, 2006) (finding "more than a negligently performed audit" where auditor allegedly (1) knew "selling prices were below their inventory cost, thereby resulting in a loss," yet did not undertake testing that otherwise would have been required; (2) was aware of blatantly false financial information, but failed to investigate, then certified that financials complied with GAAP; and (3) "attempted to conceal the deficiencies of their work" by fabricating backdated statements).

Ultimately, the Court below concluded in dismissing the original complaint that "the most Plaintiffs allege is that if Bagell Josephs had been more diligent, it 'would have' seen the AIC filings, i.e. that the failure to discover the AIC filings was negligence." In Plaintiffs' Proposed Complaint, nothing has changed. Plaintiffs note that "[i]n sum, the anomalous financial reports would have, if given

36

the appropriate audit attention as demanded under the PCAOB auditing standards and U.S. generally accepted auditing standards (or "GAAS"), caused the auditors to expand testing, as necessary, until truthful information could have been developed and uncovered, and no reasonable auditor would have failed to do so." A-180-181  Plaintiffs cannot allege that the AIC filings constituted a "seen" red flag and now merely latch on to the "no reasonable auditor" language in a futile effort to salvage their claim.  Since Plaintiffs' efforts are just that – futile – the Motion to Amend was properly denied.

     iii.     The Shenzhen Related Party Transaction is not Relevant to the Claim Against Bagell Josephs

The second red flag identified by Plaintiffs in the proposed complaint is that the "Auditor Defendants ignored or recklessly disregarded" related party transactions, such as the Shenzhen transaction.  Again, by lumping the defendants together, Plaitniffs fail to appreciate that the transaction in question occurred after Bagell Josephs' last audit.  The Shenzhen transaction occurred on DEcember 20, 2010. [A-156, para. 78]  Bagell Josephs last audit was for the year ended December 31, 2009.  Thus, this allegation should have no bearing on the claim against Bagell Josephs.

**B. Proposed Complaint Fails to Allege Loss Causation as to Bagell Josephs**

Like the Original Complaint, Plaintiffs' Proposed Complaint fails to allege loss causation in connection with the statements attributed to Bagell Josephs. In the District Court's decision dismissing the complaint against the auditors, it did not reach the issue of whether the original complaint pled loss causation against Bagell Josephs. Similarly, in the District court's decision denying leave to amend did not address the loss causation argument as against Bagell Josephs. However, should this Court need to reach that argument it is clear that neither the original complaint nor the proposed complaint plead loss causation as against Bagell Josephs.

"Loss causation is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 157 (2d Cir. 2007) (internal quotation marks omitted); *see also Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) (defining loss causation as "a causal connection between the material misrepresentation and the loss"). A misstatement or omission "is the proximate cause of an investment loss if the risk that caused the loss was within the zone of risk concealed by the misrepresentations [or omissions] alleged by a disappointed investor." *Lattanzio*, 476 F.3d at 157 (citations, internal quotation

38

marks, and alterations omitted). The loss causation requirement "exists because private securities fraud actions are 'available, not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause.'" *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 510 (2d Cir. 2010) (*quoting Dura Pharms.*, 544 U.S. at 345). "'To be corrective, [a] disclosure need not precisely mirror the earlier misrepresentation, but it must at least relate back to the misrepresentation and not to some other negative information about the company.'" *Meyer v. Greene*, 710 F.3d 1189, 1196 (11th Cir. 2013) (*quoting In re Williams Secs. Litig.—WCG Subclass*, 558 F.3d 1130, 1140 (10th Cir. 2009)).

In light of the foregoing principles, where there is a corrective disclosure, "a plaintiff must tie his loss to the dissipation of an inflated (or deflated) price upon a disclosing event that reveals the false information to the market." *Wilamowsky v. Take-Two Interactive Software, Inc.*, 818 F. Supp. 2d 744, 751 (S.D.N.Y. 2011). "[A] particular disclosure constitutes a sufficient foundation for loss causation allegations only if it somehow reveals to the market that a defendant's prior statements were not entirely true or accurate." *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 283 (S.D.N.Y. 2008). Put together, a plaintiff must

39

point to a statement that, because it corrected a prior falsehood, precipitated a change in the security's price causing his loss.

In the present case, Plaintiffs must allege a corrective disclosure as to a statement made by Bagell Josephs – not some other statements made by other defendants, especially statements made by ABAT itself. The corrective disclosure cited by Plaintiffs is by the March 30, 2011 report by Variant View Research (the "Variant Short Seller Report."). However, nothing in that corrective disclosure addressed Bagell Josephs' statements in its audit report or the statements attributed to Bagell Josephs by the complaints. Indeed, it is important to recall that an auditor is only responsible for the statements it makes, not the financial disclosures made by the company. Indeed, the audit report itself clearly states: "These consolidated financial statements are the responsibility of the Company's management. Our responsibiulity is to express an opinion on these financial statemtns based on our audits."

Here, nothing in the Variant Short Seller Report called into question Bagell Josephs' audit procedures or its opinion concerning the results of its audit. The majority of the Variant Short Seller Report's allegations, or "reasons" to short sell ABAT, are not alleged in the Proposed Complaint. Of those allegations addressed in the Proposed Complaint, only one of those allegations could potentially apply to

40

Bagell Josephs. [A-170]. As concerns HLJ ZQPT, that "corrective disclosure" was actually disclosed by Bagell Josephs in its audit report for the year ending December 31, 2009. [A-164]. Thus, the "corrective disclosure" of the alleged HLJ ZQPT misrepresentation was made in the 2009 10-K. This is two years prior to the Varient Short Seller Report. If the HLJ ZQPT transaction is a basis of a fraud claim, there are simply no allegations discussing the corrective disclosure sufficient to establish loss causation.

To hold Bagell Josephs responsible for a primary violation of the securities laws, Plaintiffs must plead that the market reacted negatively to the correction of specific statements by Bagell Josephs; not the unmasking of the alleged underlying fraud. *See Amorosa v. Ernst & Young, LLP*, 682 F. Supp. 2d 351, 363 (S.D.N.Y. 2010). In *Amorosa*, a plaintiff investor alleged that the AOL's auditor engaged in wrongdoing by approving certain false and misleading financial statements approving of the company's faulty accounting. *Id*. at 364. There, although there were several articles disclosing an underlying fraud, the plaintiffs failed to allege that the market reacted negatively to a revelation regarding the audit opinion's alleged falsity or that the audit opinion's truth was called into question. *Id*.

41

Here, there are simply no allegations connecting a drop in share price to the HLJ ZQPT transaction's accurate disclosure.  Thus, no allegations of loss causation.

Like the original complaint, the Proposed Complaint fails to connect Bagell Josephs' alleged fraudulent misstatements to the losses incurred after the release of the Variant Short Seller Report. As such, Plaintiffs fail to sufficiently plead loss causation such that granting Plaintiffs' motion for leave to amend would be futile.

5155802v.1

### C. The Proposed Complaint Does Not Allege Both Objective and Subjective Falsity[2]

Plaintiffs identify three purported statements as the basis of their claims of fraud [A-169]:

1. The Auditor Defendants' audits were not conducted in accordance with PCAOB standards; and

2. ABAT's financial statements did not fairly present the financial position of and results of operations for ABAT for fiscal years ended DEcember 31, 2007, December 31, 2008, December 31, 2009, and December 31, 2010 in conformity with GAAP.

3. As a result of the Auditor Defendants' failure to perform its audits in accordance with PCAOB standards, its audits did not provide a reasonable basis for its opinions.

---

[2] This issue was not presented to the District Court. Generally, an appellate court will not consider an issue raised for the first time on appeal. *See Singleton v. Wulff*, 428 U.S. 106, 120, 49 L. Ed. 2d 826, 96 S. Ct. 2868 (1976). Nevertheless, because this "rule is prudential, not jurisdictional," this Court has discretion to consider such arguments. *Sniado v. Bank Austria AG*, 378 F.3d 210, 213 (2d Cir. 2004) (per curiam). This Court has exercised this discretion where necessary to avoid a manifest injustice or where the argument "presents a question of law and there is no need for additional fact-finding." *Id.* Here, the question of whether Plaintiffs have satisfied the strict pleading requirements is purely a question of law. Moreover, the law and judicial approach to security fraud cases involving these and similar facts is evolving since the original Motion to Dismiss was filed (*see, e.g.*, *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd*., 2014 U.S. Dist. LEXIS 99861 (S.D.N.Y. July 21, 2014); *In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig*., 2014 U.S. Dist. LEXIS 9689 (S.D.N.Y. Jan. 27, 2014); *In re China Valves Tech. Sec. Litig*., 979 F. Supp. 2d 395 (S.D.N.Y. 2013); *In re China Organic Sec. Litig.*, 2013 U.S. Dist. LEXIS 141048 (S.D.N.Y. Sept. 30, 2013). Moreover, the issue of whether objective vs. subjective falsity in claims of fraud against an auditor relating to GAAS statements was also unclear at the time of the original Motion to Dismiss. *See, e.g., In re Puda Coal Secs., Inc*., 2014 U.S. Dist. LEXIS 83138 (S.D.N.Y. 2014); *Cole v. Duoyuan Printing, Inc*., 2013 U.S. Dist. LEXIS 121034 (S.D.N.Y. Aug. 22, 2013) ("Auditor reports of GAAS compliance, however, are "inherently ... one[s] of opinion.") and discussion above.

43

These three statements by Bagel Josephs, made in the audit reports, are each a statement of Bagell Josephs' opinions as to that particular matter.  Where a plaintiff challenges an opinion statement under the securities law, the plaintiff must allege with particularity that the defendant believed his or her opinion was false. *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1095, 111 S. Ct. 2749, 115 L. Ed. 2d 929 (1991). To bring a fraud claim based on a supposed misstatement in an opinion, a plaintiff must assert plausible allegations that "defendants did not [subjectively] believe the statements ... at the time they made them." *City of Omaha, Neb. Civilian Employees' Ret. Sys. v. CBS Corp.*, 679 F.3d 64, 67 (2d Cir. 2012); *see also Freidus v. Barclays Bank PLC*, 734 F.3d 132, 141 (2d Cir. 2013) (*quoting Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110 (2d Cir. 2011)).

An auditor's report is a statement of professional opinion, not fact. *See In re Lehman Bros. Sec & ERISA Litig.*, 799 F. Supp. 2d 258, 300-03 (S.D.N.Y. 2011) (holding that statements regarding compliance with GAAS and GAAP are inherently statements of opinion); *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 400, 11 Cal. Rptr. 2d 51, 834 P.2d 745 (1992) (holding that "an audit report is not a simple statement of verifiable fact that . . . can be easily checked against uniform standards of indisputable accuracy [but is instead] a professional opinion based on numerous and complex factors). "Subjectively falsity" requires a plaintiff to allege

44

specific facts that, if true, would permit a conclusion that "the auditor 'either did not in fact hold that opinion or knew that it had no reasonable basis for it.'" *Longtop I*, 910 F. Supp. 2d at 580  (*quoting Lehman Bros.*, 799 F. Supp. 2d at 302); *accord Hanson*, 2013 U.S. Dist. LEXIS 139590, 2013 WL 5372749, at *7.

Examining each of the alleged statements set forth by plaintiffs reveals that each is an "opinion" for purposes of fraud allegations.  It cannot rightly be disputed that auditor statements of GAAP compliance by the company are statements of opinion.  Indeed, the *sine que non* of an audit is the auditor's *opinion*.  This is reflected in the actual wording of the statements attributed to Bagell Josephs, "In our opinion,…" A-166-167.  Plaintiffs make no attempt to plead anything concerning the subjective falsity of Bagell Josephs' opinion.  In other words, there are no allegations that Bagell Josephs did not believe its opinion at the time it was made.

Similarly, Plaintiffs' third identified statement, that Bagell Josephs believed that its audits provided it a reasonable basis for its opinion is clearly an opinion statement.  To the extent it can be teased out as a separate statement from the audit opinion itself, it is clearly a statement of Bagell Josephs' belief.  Bagell Josephs believed that its audit provided it a basis to render the opinion that it did.  Thus, to plead falsity, Plaintiffs need to allege specific facts that, if true, would permit a

45

conclusion that the auditor 'either did not in fact hold that opinion or knew that it had no reasonable basis for it.  Plaintiffs plead neither and thus, this aspect of the claim is insufficiently pled.

More often debated, however, is whether the auditor's statement about how it conducted its audit is an opinion or not.  Most courts faced with this issue have concluded that such a statement is an opinion.  See, e.g., *In re Puda Coal Secs., Inc.,* 2014 U.S. Dist. LEXIS 83138 (S.D.N.Y. 2014); *Cole v. Duoyuan Printing, Inc.*, 2013 U.S. Dist. LEXIS 121034 (S.D.N.Y. Aug. 22, 2013) ("Auditor reports of GAAS compliance, however, are "inherently ... one[s] of opinion."); *In re Lehman Bros. Sec & ERISA Litig.*, 799 F. Supp. 2d 258, 300-03 (S.D.N.Y. 2011) (holding that statements regarding compliance with GAAS and GAAP are inherently statements of opinion); *Hufnagle v. Rino Int'l Corp.*, 2013 U.S. Dist. LEXIS 6095 (C.D. Cal. Jan. 14, 2013); *In re Colonial Bancgroup, Inc. Sec. Litig.*, Fed. Sec. L. Rep. (CCH) P97,906 (2014), 2014 U.S. Dist. LEXIS 40808, at *11 (M.D. Ala. March 27, 2014); *Buttonwood Tree Value Partners, LP v. Sweeney*, 2012 U.S. Dist. LEXIS 80118, *5 (C.D. Cal. June 7, 2012).  Indeed, Judge Kaplan's decision in *In re China Valves* is directly on point,

> Second, plaintiffs do not state a claim as to the audit opinion in China Valves' 2009 10-K because it was stated as an opinion. Where auditors state an opinion, which is inherently subjective, a complaint must "allege facts that, if true, would permit a conclusion that [the

46

auditors] either did not in fact hold that opinion or knew that they had no reasonable basis for it" in order to plead a material misstatement or omission. Plaintiffs have not alleged sufficient facts to suggest that the Auditor Defendants actually believed that the financial statements they certified were false or that their audits failed to comply with GAAP and/or GAAS.

*In re China Valves Tech. Sec. Litig.*, 979 F. Supp. 2d 395, 413 (S.D.N.Y. 2013) (notes omitted).

In contrast, *Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.* is oft cited for the proposition that GAAS compliance is a statement of fact. *Deephaven*, 454 F.3d 1168, 1174 (10th Cir. 2006). However, the *Deephaven* court's assertion was dicta and the court offered no explanation for its statement. 454 F.3d at 1175-76. Even courts in the Ninth Circuit have rejected arguments that GAAS compliance is a statement of act, despite *Deephaven's* dicta. *See, e.g., Buttonwood Tree Value Partners, LP v. Sweeney,* SACV 10-00537-CJC, 2012 U.S. Dist. LEXIS 80118, 2012 WL 2086607, at *2 (C.D. Cal. June 7, 2012) ("This Court concludes that . . . both the GAAS assertion and GAAP assertions are matters of opinion, because both GAAS and GAAP are a collection of broad standards that are couched in rather general and in some cases inherently subjective terms . . . .").

Thus, the weight of authority in this Circuit concludes that GAAS compliance is a statement of opinion and plaintiffs must plead both subjective and

47

objective falsity.  In other words, Plaintiffs here must plead specific facts that, if true, would permit a conclusion that the Bagell Josephs 'either did not in fact believe it conducted it audit in accordance with GAAS or knew that it had no reasonable basis for that belief.  Plaintiffs have not even attempted to plead that Bagell Josephs did not, in fact, believe it did not conduct its audit in accordance with GAAS.  Additionally, Plaintiffs have not alleged facts, that if true, would support the conclusion that Bagell Josephs knew it had no reasonable basis for its opinion about GAAS compliance.

Plaintiffs have not offered any facts to allege that Bagell Josephs had a subjective belief that its opinions were false. Similarly, they allege no facts to show that Bagell Josephs was aware, or should have been aware, of any wrongdoing by ABAT at the time Bagell Josephs issued the audit reports. Rather, Plaintiffs seem to argue in a conclusory manner that Bagell Josephs must have known about the falsity of its remarks because it could not possibly have believed it had conducted a GAAS compliant audit or that DYP's reported financial results complied with U.S. GAAP.  This circular argument is built on the supposition that Bagell Josephs should have looked at the AIC filings in China. However, nowhere do Plaintiffs cite to any authority imposing such a duty on Bagell Josephs or that Bagell Josephs was aware of any discrepancies between the AIC filings in China and the SEC

48

filings so as to have actual or constructive knowledge that the audited numbers were false. Thus, Plaintiffs have failed to demonstrate that Bagell Josephs either did not in fact hold the opinions stated in the auditor report, or that there was no reasonable basis for those opinions.

## Conclusion

For the foregoing reasons, Bagell Josephs respectfully requests that the decisions dismissing the complaint and denying leave to amend be affirmed.

Dated: August 1, 2014

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

By: _____ /s/ William J. Kelly _____

Peter J. Larkin
William J. Kelly
*Attorneys for Defendants Bagell,*
*Josephs, Levine & Company, LLC*
*and Friedman, LLP*
3 Gannett Drive
White Plains, New York 10604
(914) 323-7000
Fax: (914) 323-7001

49

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(C) because it contains 10,613 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using 14-point Time New Roman Font.

DATED: August 1, 2014

<u>/s/ William J. Kelly</u>
William J. Kelly
Partner